LUI, J.
*788 The primary issue presented in this appeal is whether a defendant in a putative class action can waive its right to compel arbitration against absent class members by deciding not to seek arbitration against the named plaintiff. In deciding that issue, we must also consider the scope of the "futility" rule, which excuses a party in some circumstances from seeking to enforce an arbitration right when the state of the law at the time would make the effort futile.
We agree with the trial court that, under the circumstances of this case, defendant and appellant Prisma LLC, doing business as Plan B Club (Plan B) waived its right to seek arbitration by filing and then withdrawing a motion to compel arbitration against the named plaintiff, Maria Elena Sprunk, and then waiting until after a class had been certified to seek arbitration against class members. We therefore affirm the trial court's denial of Plan B's motion to compel arbitration.
*789 BACKGROUND
Sprunk is the named plaintiff in a wage and hour class action that the trial court certified on April 24, 2015. Plan B owns and operates a bar and restaurant in Los Angeles in which exotic (i.e., bikini-clad) dancers perform. Sprunk and the other class members are dancers who performed at Plan B.
Sprunk alleges that the dancers were misclassified as independent contractors rather than employees, and that they were consequently denied various benefits that the law requires for employees, such as minimum wages, meal periods, and reimbursement of expenses. Sprunk also alleges that Plan B misappropriated tips.
Sprunk and all other class members signed contracts containing an arbitration clause. There were two versions of the arbitration clause. One version, which was in effect prior to July 2011, did not specifically address class arbitration.[1] The other version, which Plan B claimed was in effect beginning in July 2011, contained an express waiver.[2] Sprunk signed the first version of the agreement.
1. Proceedings in the Trial Court
Sprunk filed her complaint on October 7, 2011. On November 28, 2011, Plan B sent an arbitration demand. Plan B's demand *344 letter stated that "new case law has issued which permits demanding and requiring arbitration of individual claims despite class allegations," citing AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 ( Concepcion ) and Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp. (2010) 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 ( Stolt-Nielsen ).
The parties filed a joint initial status report on December 30, 2011, in which Plan B stated that it "wishes to file a motion to compel arbitration at the earliest available opportunity." Sprunk stated that she intended to oppose the arbitration motion, but agreed that Plan B's "contemplated motion to *790 compel arbitration is an issue that should be resolved before discovery on the merits, or discovery with respect to class certification issues, is commenced."
On January 25, 2012, Plan B filed a "Petition to Compel Individual Arbitration and Stay Superior Court Proceedings." The petition sought arbitration of Sprunk's individual claims only.
Sprunk filed an opposition to the petition on February 15, 2012, in which she argued, among other things, that the "extremely broad" arbitration clause that Sprunk signed permitted arbitration of class claims. For that reason, Sprunk claimed that the court must decide "whether or not to order arbitration of all individual and class claims," or alternatively should deny Plan B's motion on the ground that it sought to limit the arbitration only to individual claims. Sprunk also argued that, to the extent the arbitration agreement is "construed as a class action waiver," Plan B could not compel arbitration because such a waiver would interfere with the right of employees to engage in collective action under federal law. In support of that argument Sprunk cited a January 3, 2012 decision by the National Labor Relations Board (Board). ( In re D. R. Horton, Inc. (2012) 357 NLRB 2277 ( Horton I ), revd. in part sub nom. D.R. Horton, Inc. v. N.L.R.B. (5th Cir. 2013) 737 F.3d 344 ( Horton II ).)
On September 6, 2012, Plan B filed a notice withdrawing its motion for arbitration. Plan B filed an answer the same day. The answer included several affirmative defenses based upon the arbitration agreements. Plan B also filed a cross-complaint, which it amended on November 14, 2002.
The cross-complaint named Sprunk and 500 fictional "Roe" cross-defendants, whom Plan B described as "professional entertainers who performed under contract as exotic dancers" at Plan B's premises during the class period. Plan B alleged that it was entitled to a "setoff" in the form of the dance fees that the cross-defendants earned in the event that the cross-defendants were adjudicated to be employees. Plan B based the allegation on a provision in the cross-defendants' contracts stating that "[i]f Plan B were an 'employer' all dance fees would be its sole property," and that Plan B would pay the cross-defendants only "the legal minimum wage and any other benefits required by law."
On December 19, 2012, Sprunk filed a demurrer and a motion to strike in response to the cross-complaint. Before those motions could be heard, Plan B dismissed the cross-complaint without prejudice.
The parties proceeded with discovery. Sprunk served interrogatories and deposed four Plan B witnesses. Plan B served a document request on Sprunk *791 and took her deposition. Plan B responded to Sprunk's interrogatories on February 20, 2013, again identifying the arbitration agreements as an affirmative defense.
Sprunk filed her class certification motion on September 19, 2014. In opposing *345 class certification, Plan B argued that a class action was not superior to other forms of litigation because the class members had signed arbitration agreements. Citing several federal district court decisions, Plan B asserted that it "could not have previously moved for individual arbitration of the claims of the unnamed class members" because the putative class members were not parties to the action prior to the time the court certified the class. In her reply, Sprunk argued that Plan B had waived the right to arbitrate by actively litigating the case.
The trial court granted class certification in a written order filed on April 24, 2015. The court rejected Plan B's arbitration argument. The court found that Plan B's delay in seeking arbitration-during which it took advantage of "the court's processes"-meant that Plan B had "waived its right to arbitrate at least as to Plaintiff's claims."
Following the court's ruling, the parties filed a joint status conference report in which Plan B stated that it intended to file a motion to compel individual arbitration "of the claims of Plaintiff and the Class Members." The court set a date for the motion to compel arbitration.
2. Plan B's Motion to Compel Arbitration Against Class Members
On August 12, 2015, Plan B filed two separate motions to compel arbitration directed to the class members who signed the two different versions of the arbitration agreement. In the motions Plan B again argued that it had not waived the right to compel arbitration against the unnamed class members because they were not parties until a class had been certified.
Plan B also argued that withdrawing its original motion to compel arbitration against Sprunk did not cause an unreasonable delay. Plan B claimed that it withdrew that motion because it feared that, under the state of the law at the time, the court might order classwide arbitration, which Plan B did not want. Plan B argued that it "had no certainty" that the court would order only individual arbitration because the law at the time made class arbitration possible even if an arbitration agreement contained a class action waiver. In particular, Plan B relied on the holding in Gentry v. Superior Court (2007) 42 Cal.4th 443, 64 Cal.Rptr.3d 773, 165 P.3d 556 ( Gentry ) that a class arbitration waiver in an employment arbitration agreement is invalid if class arbitration would provide a significantly more effective means of vindicating *792 the unwaivable rights of employees than individual arbitration. ( 42 Cal.4th at p. 450, 64 Cal.Rptr.3d 773, 165 P.3d 556.) Plan B claimed that Gentry's status was uncertain until our Supreme Court decided Iskanian v. CLS Transportation Los Angeles , LLC (2014) 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129 ( Iskanian ).[3]
Sprunk opposed the motions on several grounds, including: (1) Plan B had waived its right to arbitrate; (2) the arbitration agreements were unconscionable; and (3) Plan B failed to provide sufficient evidence that the class members actually signed arbitration agreements.
The trial court heard the motions on October 15, 2015. The court rejected the *346 argument that the arbitration agreements were unconscionable. However, the court ruled that Plan B had waived its right to compel arbitration based upon its delay in seeking arbitration of Sprunk's individual claims. The court concluded that the delay was both unreasonable and prejudicial.
The trial court considered and rejected Plan B's justifications for its delay in moving to compel arbitration. The court agreed with Plan B that, prior to certification, Plan B could not have compelled absent class members to arbitrate. However, the court concluded that Plan B had unreasonably delayed in seeking arbitration of Sprunk's claims. The court noted that Plan B "could have gone through with [its] motion with Ms. Sprunk" but instead "made a strategic decision" that it "didn't want to take the risk" of classwide arbitration. Even though Sprunk herself had signed only one form of the arbitration agreement, Plan B could have brought a motion directed to that version and "ended the case" if the trial court had ruled in its favor, without the need to brief and decide the class certification motion.
The trial court rejected Plan B's argument that the state of the law at the time it moved to compel arbitration against Sprunk would have made the motion "futile." The court observed that "[t]he law wasn't clearly against" Plan B, and concluded that Plan B simply decided it "didn't want to take the risk" of classwide arbitration. The court also found that Plan B delayed unreasonably in moving to compel arbitration even after the decision in Iskanian , which was filed in June 2014. ( Iskanian, supra, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129.)
The court found that the plaintiffs would be prejudiced by the four-year delay in adjudicating their claims if the court were to now order arbitration. The *793 court also expressed concern that the plaintiffs might be reluctant to "come forward" to arbitrate their claims individually due to "[t]he kind of business that they are in."
The court denied Plan B's motion in a written order filed on November 6, 2015.
DISCUSSION
1. Plan B Provided Sufficient Evidence of the Arbitration Agreements
Sprunk initially argues that it is unnecessary to consider the trial court's waiver finding because Plan B did not provide adequate evidence to show that individual class members had actually signed arbitration agreements. Plan B supported its motions to compel arbitration with examples of the two different versions of the arbitration provision attached as exhibits to the declaration of Plan B's general manager, Frank Grundel. The pre-July 2011 version was signed by Sprunk; the copy of the later version was unsigned. On reply, Grundel submitted a supplemental declaration stating that "[e]ach and every Class Member signed one or more forms of the Entertainer Contracts attached to my original Declaration."
Sprunk argues that this evidence was insufficient to establish that the class members were actually parties to an arbitration agreement. Sprunk claims that "nothing excuses the failure to attach signed copies to prove the right to arbitrate as to each class member."
We reject the argument. Under the California Rules of Court, rule 3.1330, a party petitioning to compel arbitration must state "the provisions of the written agreement and the paragraph that provides for arbitration." "The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference." (Ibid. , italics added.) Thus, under this rule, *347 unless there is a dispute over authenticity, it is sufficient for a party moving to compel arbitration to recite the terms of the governing provision. (See Condee v. Longwood Management Corp. (2001) 88 Cal.App.4th 215, 219, 105 Cal.Rptr.2d 597 ( Condee ) [holding that rule 371, the predecessor to rule 3.1330, "does not require the petitioner to introduce the agreement into evidence or provide the court with anything more than a copy or recitation of its terms"].) The Grundel declarations met this requirement by providing the two different versions of the arbitration provision and stating that all class members signed at least one of those versions.
Sprunk's reliance on Ruiz v. Moss Bros. Auto Group, Inc. (2014) 232 Cal.App.4th 836, 181 Cal.Rptr.3d 781 ( Ruiz ) is misplaced. In that case, there *794 was a dispute about whether the plaintiff had actually signed an employment agreement. The defendant provided conclusory declarations that the plaintiff, Ruiz, had "electronically signed" the agreement. ( Id. at p. 840, 181 Cal.Rptr.3d 781.) Ruiz testified that he could not recall signing an arbitration provision. ( Ibid. ) The appellate court found sufficient evidence supporting the trial court's finding in favor of the plaintiff in the authentication dispute. The court distinguished Condee , supra , 88 Cal.App.4th 215, 105 Cal.Rptr.2d 597, explaining that the court in that case held "that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement as a preliminary matter in moving for arbitration or in the event that authenticity of the signature is not challenged." ( Ruiz, 232 Cal.App.4th at p. 846, 181 Cal.Rptr.3d 781.)
Here, Sprunk did not challenge the truth of Plan B's claim that each class member signed an arbitration provision; she merely contested the sufficiency of Plan B's preliminary evidentiary showing. Moreover, here, unlike in Ruiz , the trial court implicitly rejected Sprunk's authentication argument by considering the merits of Plan B's motion. The trial court's ruling was supported by sufficient evidence.
Sprunk also argues that the trial court should not have considered Grundel's statement that each class member signed one or the other versions of the arbitration agreement because the statement was submitted for the first time in his reply declaration. Sprunk objected to that declaration below on the ground that it included new evidence, and the trial court overruled the objection. The declaration responded to argument in Sprunk's opposition concerning the alleged lack of evidence "that any unnamed class member signed an arbitration agreement." The decision to consider the declaration was within the court's discretion. ( Alliant Ins. Services, Inc. v. Gaddy (2008) 159 Cal.App.4th 1292, 1307-1308, 72 Cal.Rptr.3d 259.)
We therefore proceed to consider Plan B's challenges to the trial court's finding that Plan B waived its arbitration right.
2. Sufficient Evidence Supports the Trial Court's Waiver Finding
A. Standard of review
Whether a party has waived the right to compel arbitration is generally a question of fact. A trial court's finding of waiver is therefore reviewed under the substantial evidence standard unless " 'the facts are undisputed and only one inference may reasonably be drawn,' " in which case " 'the reviewing court is not bound by the trial court's ruling.' " ( St. Agnes Medical Center v. PacifiCare of California (2003) 31 Cal.4th 1187, 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727 ( St. Agnes ), quoting Platt Pacific, Inc. v. Andelson (1993) 6 Cal.4th 307, 319, 24 Cal.Rptr.2d 597, 862 P.2d 158.)
*348 *795 While the parties here do not disagree over the relevant litigation events, they have very different positions concerning the inferences that should be drawn from those events. In particular, they disagree about the reasons for Plan B's delay in seeking to compel arbitration and whether Plan B's conduct was inconsistent with an intent to arbitrate. Because the trial court could reasonably draw different inferences from the undisputed events, we apply the substantial evidence standard in reviewing the court's findings on these issues. ( Bower v. Inter-Con Security Systems, Inc. (2014) 232 Cal.App.4th 1035, 1043, 181 Cal.Rptr.3d 729 ( Bower ) [substantial evidence standard applied where "different inferences may be drawn depending upon the weight to be afforded to certain facts"].) Under that standard, the trial court's finding of waiver is binding on this court if "supported by sufficient evidence." ( Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 983, 64 Cal.Rptr.2d 843, 938 P.2d 903 ( Engalla ).)
Plan B also raises a legal issue concerning the status of absent class members. Plan B argues that the trial court erred in considering Plan B's delay in moving to compel arbitration before the court decided class certification because the unnamed class members were not parties until a class was certified. Because this argument raises an issue of law concerning the time period that the trial court could properly consider in analyzing waiver, we review it de novo. ( Sky Sports, Inc. v. Superior Court (2011) 201 Cal.App.4th 1363, 1367, 134 Cal.Rptr.3d 405 ( Sky Sports ) [applying the de novo standard to the issue whether a defendant "waived its right to compel arbitration because it did not bring the motion before certification of a class that included parties to the arbitration agreement"].)
In reviewing the trial court's ruling, we also keep in mind the "strong policy favoring arbitration agreements" found in both the FAA and state law. ( St. Agnes, supra, 31 Cal.4th at p. 1195, 8 Cal.Rptr.3d 517, 82 P.3d 727.) In light of that policy, "waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." ( Ibid. )
B. Factors relevant to waiver
Code of Civil Procedure section 1281.2 provides that, upon petition by a party to an arbitration agreement, a court shall order arbitration "if it determines that an agreement exists," unless it determines that "(a) [t]he right to compel arbitration has been waived by the petitioner; or [¶] (b) [g]rounds exist for the revocation of the agreement." Although "no single test delineates the nature of the conduct that will constitute a waiver of arbitration," our Supreme Court has identified various factors that are "relevant and properly considered in assessing waiver claims." ( St. Agnes, supra, 31 Cal.4th at pp. 1195-1196, 8 Cal.Rptr.3d 517, 82 P.3d 727.) Those factors, first articulated in *796 Sobremonte v. Superior Court (1998) 61 Cal.App.4th 980, 992, 72 Cal.Rptr.2d 43 ( Sobremonte ), are: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures *349 not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " ( St. Agnes, 31 Cal.4th at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727 ; Sobremonte, 61 Cal.App.4th at p. 992, 72 Cal.Rptr.2d 43.)
The trial court repeatedly returned to the theme of Plan B's delay in discussing the specific St. Agnes factors. In doing so, the trial court correctly recognized that the issue of delay is dispositive here. Therefore, before analyzing the specific St. Agnes factors, we first consider the circumstances of, and Plan B's claimed justification for, the nearly four-year delay between the filing of this action and Plan B's motions to compel arbitration.
C. Substantial evidence supports the trial court's finding that Plan B delayed filing its motions to compel arbitration so that it could obtain a strategic advantage
The trial court found that Plan B could have asserted its right to arbitrate against Sprunk, but made a strategic decision to delay doing so. Such conduct fits comfortably within the legal concept of waiver. As the court explained in St. Agnes , "While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right." ( St. Agnes, supra, 31 Cal.4th at p. 1195, fn. 4, 8 Cal.Rptr.3d 517, 82 P.3d 727.) In the context of an arbitration right, waiver can result from " ' "[unreasonable delay] in undertaking the procedure." ' " ( Id. at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727 ; see Engalla, supra, 15 Cal.4th at p. 984, 64 Cal.Rptr.2d 843, 938 P.2d 903 ["the evidence of Kaiser's course of delay, ... which was arguably unreasonable or undertaken in bad faith, may provide sufficient grounds for a trier of fact to conclude that Kaiser has in fact waived its arbitration agreement"].)
Plan B does not dispute that unreasonable delay can cause waiver, but argues that it did not delay at all in seeking arbitration against the persons who were actually the subject of its motions. Plan B claims that it could not have moved for, or even demanded, arbitration from the unnamed class members until a class had been certified. Plan B therefore "assumes that had it brought motions to compel individual arbitration of the claims of the *797 unnamed Class Members prior to certification, the Court would have denied the motions on the basis that the Court had no jurisdiction over them because they were not yet, and might never be if the class was not certified, parties to the litigation."
Along with Plan B, we may assume (without deciding) that a motion to compel arbitration against unnamed class members would have been premature until a class was certified. However, that is not the end of our inquiry. Sprunk was a party, and Plan B could have moved to compel arbitration against her. Indeed, it did so, and then decided to withdraw the motion. Thus, the critical issue is whether the trial court could consider Plan B's delay in moving to compel arbitration against Sprunk in determining whether Plan B waived its right to arbitrate against the unnamed class members, who ultimately did become parties and for whom Sprunk serves as the class representative. We conclude that, in the circumstances of this case, the trial court could properly do so.
i. The trial court properly considered Plan B's delay in moving to compel arbitration against Sprunk
In considering the significance of Plan B's conduct, the trial court was not *350 required to ignore the practical realities of the litigation. Sprunk was a signatory to an arbitration agreement. Thus, as the trial court recognized, Plan B had the procedural mechanism available to compel arbitration in a manner that, if successful, would as a practical matter have resolved the judicial proceedings with respect to the class.
Had Plan B forced Sprunk to individual arbitration, it likely would have ended the judicial action. While a different named plaintiff could conceivably have filed a new action, all class members were subject to an arbitration provision. If Sprunk had been forced to arbitrate, given the court's ruling it is unlikely that any other plaintiff would attempt to litigate in court.[4] And, were someone to make the attempt, it is even less likely that the result would be different in light of the principle of stare decisis.
Plan B correctly points out that unnamed class members would not technically have been bound by the trial court's rulings prior to certification. However, this fact does not affect the waiver analysis. By moving to compel *798 arbitration against Sprunk, Plan B could have effectively settled the question whether the claims in this action should be adjudicated in a court or through arbitration, at least with respect to the form of the agreement that Sprunk signed.[5]
Instead, as the trial court observed, there is good reason to suspect that Plan B made a strategic decision to delay its motion to compel arbitration to give itself another opportunity to win the case by defeating a class. Plan B's stated reason for withdrawing its motion to compel arbitration against Sprunk was concern that, based upon the current state of the law, Plan B might be compelled to participate in class arbitration. Yet Plan B waited over a year to file its motions to compel arbitration after the Supreme Court decision that Plan B concedes settled the law in California on class arbitration waivers. Our Supreme Court issued its decision in Iskanian on June 23, 2014. Plan B did not file its motions to compel arbitration until August 12, 2015, over a year after that decision and after the trial court had issued its order certifying the class on April 24, 2015.
Based upon this sequence of events, the trial court explained its conclusion: "So, I *351 think, the defendants rolled the dice again thinking, maybe, the class wouldn't be certified. I don't know. But that was quite a delay between the time Iskanian came down and the time defendants said we wanted to file our motion. So, I think, the actions were inconsistent with the right to arbitrate."
An attempt to gain a strategic advantage through litigation in court before seeking to compel arbitration is a paradigm of conduct that is inconsistent with the right to arbitrate. For example, Bower was a putative wage and hour class action in which the defendant engaged in discovery and attempted to settle the case on a classwide basis when the class was a modest size. ( Bower, supra, 232 Cal.App.4th at pp. 1038-1040, 181 Cal.Rptr.3d 729.) When the plaintiff sought an amendment that would have expanded the class, the defendant (Inter-Con) moved to compel arbitration. The trial court found waiver, and *799 the appellate court affirmed, concluding that Inter-Con's decision to delay seeking arbitration "appears to have been tactical." ( Id. at pp. 1045, 1049, 181 Cal.Rptr.3d 729 ). Based upon Inter-Con's litigation conduct, "[o]ne can infer that Inter-Con chose to conduct discovery, delay arbitration, and seek a classwide settlement because it saw an advantage in pursuing that course of action in the judicial forum." ( Id. at p. 1049, 181 Cal.Rptr.3d 729.) Such conduct provided substantial evidence to support the finding that "Inter-Con's actions were inconsistent with a right to arbitrate." ( Id. at p. 1045, 181 Cal.Rptr.3d 729.)
The court in Oregel v. PacPizza, LLC (2015) 237 Cal.App.4th 342, 187 Cal.Rptr.3d 436 ( Oregel ) also relied upon a defendant's strategic decision in finding waiver. The defendant, PacPizza, engaged in discovery and delayed moving to compel arbitration until after the plaintiff had filed his motion for class certification. ( Id. at pp. 346-348, 187 Cal.Rptr.3d 436.) The trial court found waiver on a number of grounds, including that PacPizza made the strategic decision to seek arbitration after seeing the plaintiff's class certification motion. ( Id. at pp. 350-351, 187 Cal.Rptr.3d 436.)
The appellate court affirmed, rejecting PacPizza's explanation that it delayed filing a motion to compel arbitration until Iskanian had clarified the law on class arbitration. In analysis that is equally appropriate here, the court concluded that PacPizza's decision not to move to compel arbitration until after the plaintiff had filed his class certification motion was consistent with a strategic decision rather than a bona fide desire to await clarification of the law: "[I]f PacPizza had truly believed the arbitration agreement was unenforceable prior to Iskanian , as it would have us believe, the looming issue of class certification would not have made any difference: Either the state of the law supported enforcement of the agreement or it did not. Instead, the record suggests that PacPizza believed it could keep open the option of arbitrating the dispute while it conducted discovery, but when it appeared the class was going to be certified, it asserted its purported right to arbitrate to preempt certification." ( Oregel , supra , 237 Cal.App.4th at pp. 358-359, 187 Cal.Rptr.3d 436.) The court concluded that this strategic decision "should not be rewarded." ( Id. at p. 359, 187 Cal.Rptr.3d 436.)
Similarly, here there is substantial evidence to support the conclusion that Plan B's delay in moving to compel arbitration until after a ruling on class certification was a strategic decision to attempt to win the case by defeating the class before seeking to arbitrate. Such a strategic use of the judicial forum is inconsistent with an *352 arbitration right and supports a waiver finding.
Plan B cites Sky Sports and Lee v. Southern California University for Professional Studies (2007) 148 Cal.App.4th 782, 56 Cal.Rptr.3d 134 for the *800 proposition that it is premature to bring a motion to compel arbitration against unnamed class members until the class has been certified. But neither of those cases involved a situation where a named plaintiff in a putative class action had agreed to arbitrate. Because the named plaintiffs in those cases had not signed arbitration agreements, the courts concluded that they could not be compelled to arbitrate, even though the putative class included persons who had signed such agreements. ( Sky Sports, supra , 201 Cal.App.4th at pp. 1367-1369, 134 Cal.Rptr.3d 405 ; Lee , at pp. 786-788, 56 Cal.Rptr.3d 134.) The courts in those cases had no reason to consider whether a defendant who decides for strategic reasons not to pursue arbitration against a named plaintiff who did sign an arbitration agreement could waive its right to arbitrate against the class.
Plan B also cites several federal district court cases for the proposition that unnamed class members are not parties until a class has been certified. ( TFT-LCD (Flat Panel) Antitrust Litigation (N.D.Cal., May 9, 2011) 2011 WL 1753784, 2011 U.S. Dist. LEXIS 55033 ( TFT-LCD ); Saleh v. Titan Corp. (S.D.Cal. 2004) 353 F.Supp.2d 1087, 1091 ( Saleh ); Laguna v. Coverall North America (S.D.Cal. July 26, 2011) 2011 WL 3176469, 2011 U.S. Dist. LEXIS 81105 ( Laguna ); Mora v. Harley-Davidson Credit Corp. (E.D.Cal. April 9, 2012) 2012 WL 1189769, 2012 U.S. Dist. LEXIS 49636 ( Mora ).) Those cases are not controlling, and in any event do not purport to describe a general rule that would require reversal here.
In TFT-LCD , supra , 2011 WL 1753784, 2011 U.S. Dist. LEXIS 55033, the only one of these cases that dealt with delay in moving to compel arbitration against a named plaintiff, the court found the issue of waiver "extremely close," and characterized the defendants' delay as conduct that "evinces either previous indifference to the arbitration clauses they now seek to assert or, possibly, a strategic decision to delay their enforcement." ( Id. at p. *3, 2011 U.S. Dist. LEXIS 55033 at p. *28.) The case was a complex, multi-defendant antitrust class action in which, unlike here, not all class members (and apparently not even all named plaintiffs) had signed arbitration agreements. ( Id. at p. *8, 2011 U.S. Dist. LEXIS 55033 at pp. **22-23.) Thus, unlike here, a motion to compel arbitration earlier in the case presumably could not have been dispositive. The district court's discretionary decision not to find waiver based upon these facts does not support a general rule that would preclude the trial court's waiver finding here.[6]
*801 Thus, the abstract question of whether absent class members are parties to a class action prior to certification is not *353 decisive here. The trial court could properly consider Plan B's delay in seeking arbitration against Sprunk when deciding whether it had waived its right to compel arbitration against unnamed class members following certification.
For the reasons discussed below, the trial court also properly concluded that Plan B's stated reasons for delaying a motion to compel against Sprunk were not sufficient to avoid waiver.
ii. Plan B's asserted reason for withdrawing its motion to compel against Sprunk does not justify its decision to litigate in court rather than arbitrate
Plan B argues that its withdrawal of its motion to compel arbitration against Sprunk and its subsequent participation in the litigation should not be considered in a waiver analysis because it acted reasonably based upon the state of the law on class arbitration at the time. Specifically, Plan B claims that it reasonably withdrew its motion to compel arbitration against Sprunk because "it believed individual arbitration was foreclosed under then current law." Before considering the merits of this argument, it is helpful to recap briefly the state of the law prior to our Supreme Court's decision in Iskanian .
In 2005, the court held in Discover Bank , supra , 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, that class arbitration waivers were unconscionable and unenforceable under California law when included in consumer contracts of adhesion, where "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." ( Id. at pp. 162-163, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) The court subsequently held in Gentry , supra , 42 Cal.4th 443, 64 Cal.Rptr.3d 773, 165 P.3d 556, that class action waivers in employment arbitration agreements might be unenforceable on the ground that they "undermine the vindication of the employees' unwaivable statutory rights." ( Id. at p. 450, 64 Cal.Rptr.3d 773, 165 P.3d 556.) The court directed trial courts to consider various factors to determine whether "a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" and whether "the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations." ( Id. at p. 463, 64 Cal.Rptr.3d 773, 165 P.3d 556.) If so, then the class arbitration waiver should not be enforced. ( Ibid . )
In April 2011, the United States Supreme Court invalidated Discovery Bank in its ruling in Concepcion . ( Concepcion, supra, 563 U.S. 333, 131 S.Ct. 1740.) The court *802 held that requiring the availability of classwide arbitration "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." ( Id. at p. 344, 131 S.Ct. 1740.) The court concluded that the FAA therefore preempted "California's Discovery Bank rule." ( Id. at p. 352, 131 S.Ct. 1740.)
In 2012, the Board issued its decision in Horton I, supra, 357 NLRB 2277. The Board decided that the National Labor Relations Act (49 Stat. 449, 29 U.S.C. § 151 et seq. (NLRA)) generally prohibits contracts that require employees to waive their right to participate in class proceedings to resolve wage claims. The Board concluded that such contracts amount to an unfair labor practice under the NLRA because they interfere with the right of employees to engage in concerted activity. ( Horton I , at p. 2280.) The Board also found that the NLRA did not conflict with the FAA in invalidating such waivers. ( Id. at pp. 2285-2288.)
*354 The Board's rulings on these issues were subsequently reversed by the Fifth Circuit in December 2013. (See Horton II, supra, 737 F.3d 344.) The Fifth Circuit concluded that "[r]equiring a class mechanism is an actual impediment to arbitration and violates the FAA," and that neither the NLRA itself nor any inference from an inherent conflict between the FAA and the NLRA demonstrated any congressional command against application of the FAA. ( Id. at p. 360.)[7]
Our Supreme Court's decision in Iskanian considered this history in the context of a wage and hour class action that involved an arbitration agreement containing an express class action waiver. The court decided several issues relevant to the enforceability of class action waivers. First, the court confirmed that Concepcion invalidated Gentry . The court explained that, under the holding in Concepcion , the FAA preempts states from "mandating or promoting procedures incompatible with arbitration," and that "[t]he Gentry rule runs afoul of this ... principle." ( Iskanian, supra, 59 Cal.4th at p. 366, 173 Cal.Rptr.3d 289, 327 P.3d 129.) The court also rejected the holding in Horton I , agreeing with the *803 Fifth Circuit's ruling that the Board's decision was inconsistent with the FAA and was not justified by any " ' "contrary congressional command" ' " in the NLRA. ( Iskanian, at p. 373, 173 Cal.Rptr.3d 289, 327 P.3d 129.)
The final entry in this chronology is the United States Supreme Court's decision in Stolt-Nielsen . In that case, decided in 2010, the court held that, under the FAA, no party may be compelled to participate in class arbitration "unless there is a contractual basis for concluding that the party agreed to do so." ( Stolt-Nielsen, supra, 559 U.S. at p. 684, 130 S.Ct. 1758.) The case did not involve a class action waiver; rather, the contract at issue was silent on the issue of class arbitration.[8] The court concluded that an agreement for class arbitration could not be inferred from the contract "because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." ( Id. at p. 685, 130 S.Ct. 1758.)
In light of this history, Plan B's argument that its delay in seeking arbitration against Sprunk was reasonable based upon the state of the law is unpersuasive for several reasons.
a. Plan B delayed unreasonably even after the decision in Iskanian
Plan B claims that the opinion in Iskanian changed the legal landscape.
*355 However, as discussed above, that argument does not explain Plan B's delay of over a year in moving to compel arbitration after the Supreme Court decided that case. Plan B attempts to justify its delay by reiterating its argument that a motion to compel arbitration against unnamed class members would have been premature prior to certification. But that has nothing to do with the state of the law on class arbitration. There was nothing precluding Plan B from moving to compel individual arbitration against Sprunk as soon as Iskanian was decided, even if Plan B had reasonably believed prior to that decision that such a motion would have been futile. ( Oregel, supra, 237 Cal.App.4th at pp. 358-359, 187 Cal.Rptr.3d 436.)
b. Plan B's motion would not have been "futile" before Iskanian
Plan B claims that the law on class arbitration waivers was unsettled until the court's decision in Iskanian confirmed that Concepcion had overruled Gentry, and that the Board's ruling in Horton I would not be followed in *804 California. However, while uncertainty remained, there was ample reason to conclude that Plan B could not comfortably rely on the decisions in Gentry or Horton I to excuse the failure to seek individual arbitration. In particular, a prudent litigant who was intent on avoiding an implication of waiver would not have taken such a risk.
Several Court of Appeal decisions prior to the Supreme Court's opinion in Iskanian suggested that Concepcion had invalidated Gentry and declined to follow Horton I . In Nelsen v. Legacy Partners Residential, Inc. (2012) 207 Cal.App.4th 1115, 144 Cal.Rptr.3d 198 ( Nelsen ), the court affirmed the trial court's order enforcing an agreement for individual arbitration in an employment class action, rejecting the plaintiff's argument that individual arbitration violated public policy. The court declined to follow Horton I . ( Nels e n , at p. 1133, 144 Cal.Rptr.3d 198.) With respect to Gentry , the court observed that the "continuing vitality" of that case "has been called into serious question" by Concepcion . ( Id. at p. 1131, 144 Cal.Rptr.3d 198.) Citing the Court of Appeal opinion in Iskanian, the court noted that "[o]ne California appellate court and a number of federal district courts have found Concepcion applies equally to Gentry and the FAA therefore precludes California courts from ordering classwide arbitration of wage and hour claims unless the parties have agreed to it." ( Nelsen , at pp. 1131-1132, 144 Cal.Rptr.3d 198.)
The court in Nelsen did not reach the issue of Gentry's continued viability, but the reason it did not do so would also have supported Plan B's motion to compel against Sprunk. The court noted that Gentry did not establish a "categorical rule applicable to the enforcement of class arbitration waivers in all wage and hour cases." ( Nelsen, supra, 207 Cal.App.4th at p. 1132, 144 Cal.Rptr.3d 198.) Rather, to show that a waiver is invalid, a plaintiff was required to prove the presence of a number of case-specific factors demonstrating that individual arbitration would not be adequate.[9] Because the plaintiff had not made such a showing in Nelsen , the court concluded that Gentry was not applicable even if it was still good law.
Similarly, in *356 Kinecta Alternative Financial Solutions, Inc. v. Superior Court (2012) 205 Cal.App.4th 506, 140 Cal.Rptr.3d 347 ( Kinecta ), disapproved on another ground in Sandquist v. Lebo Automotive, Inc. (2016) 1 Cal.5th 233, 260, footnote 9, 205 Cal.Rptr.3d 359, 376 P.3d 506, the court questioned the continued viability of Gentry , but held that it did not apply to that case in any event because the plaintiff failed to provide evidence showing the presence of the specific Gentry factors. ( Id. at pp. 516-517, 140 Cal.Rptr.3d 347.) And in *805 Truly Nolen of America v. Superior Court (2012) 208 Cal.App.4th 487, 145 Cal.Rptr.3d 432 ( Truly Nolen ), the court also questioned Gentry in light of Concepcion before concluding that stare decisis required it to follow Gentry . ( Id. at pp. 506-507, 145 Cal.Rptr.3d 432.) Nevertheless, as in Nelsen and Kinecta , the court held that Gentry did not invalidate the arbitration agreement in that case because the plaintiff had failed to present individualized evidence establishing the Gentry factors. ( Id. at p. 510, 145 Cal.Rptr.3d 432.) The court also declined to follow Horton I . ( Id. at pp. 514-515, 145 Cal.Rptr.3d 432.)
Here, in opposing Plan B's initial motion to compel, Sprunk did not provide any evidence showing the presence of the specific Gentry factors. Sprunk did not even argue that Gentry required class arbitration; she cited that case only for the proposition that, if arbitration were ordered, it must include certain procedural safeguards. Plan B did not withdraw its original motion to compel until September 6, 2012, after the Court of Appeal decisions in Nelsen, Kinecta, and Truly Nolen . Thus, even if the trial court in this case had decided that Gentry remained good law, Plan B had ample authority to argue that Gentry did not apply to its motion.
In summary, well prior to our Supreme Court's decision in Iskanian , the state of the law on class arbitration in California was that (1) the continued viability of Gentry was in serious question following Concepcion , (2) even under Gentry , a class plaintiff resisting individual arbitration had to make a specific factual showing that only a class action could adequately protect unwaivable statutory rights (a showing that Sprunk did not make), (3) the Fifth Circuit had reversed Horton I , and (4) several California Courts of Appeal had rejected Horton I . While the outcome was not free from doubt, given this authority one could not reasonably describe Plan B's prospects of compelling individual arbitration prior to Iskanian as "futile."
That conclusion dooms Plan B's argument that it reasonably delayed moving to compel arbitration against Sprunk because of the state of the law. As the trial court correctly observed here, Plan B was not entitled to litigate indefinitely in court so long as there was some risk that it might lose a motion to compel individual arbitration. Plan B could reasonably make a strategic decision that it did not want to assume the risk that the trial court might order class arbitration. But risk is not the same as futility.
In Iskanian , the court held that the defendant's conduct in initially filing, and then withdrawing, a motion to compel arbitration in a wage and hour class action did not amount to waiver because the state of the law at the time the defendant (CLS) withdrew the motion would have made the motion futile. ( Iskanian, supra, 59 Cal.4th at pp. 374-378, 173 Cal.Rptr.3d 289, 327 P.3d 129.) CLS had filed the motion before our Supreme Court decided Gentry , and the trial court granted it. ( *806 Id. at p. 375, 173 Cal.Rptr.3d 289, 327 P.3d 129.) However, while the case was in the appellate court, the Supreme Court issued its opinion in Gentry , and CLS withdrew its motion. ( Ibid. ) When the United States Supreme Court subsequently decided Concepcion , CLS quickly filed a renewed motion to *357 compel arbitration and to dismiss the class (which had been certified in the interim). ( Ibid. )
The court held that CLS's delay was reasonable in light of the state of the law and did not support waiver. ( Iskanian, supra, 59 Cal.4th at pp. 376-378, 173 Cal.Rptr.3d 289, 327 P.3d 129.) The court concluded that "futility as grounds for delaying arbitration is implicit in the general waiver principles we have endorsed." ( Id. at p. 376, 173 Cal.Rptr.3d 289, 327 P.3d 129.) Significantly, the court described the "futility" doctrine using language as strong as the label suggests: "The fact that a party initially successfully moved to compel arbitration and abandoned that motion only after a change in the law made the motion highly unlikely to succeed weighs in favor of finding that the party has not waived its right to arbitrate." ( Ibid. , italics added.) In later discussing the issue of prejudice, the court similarly explained: "Where, as here, a party promptly initiates arbitration and then abandons arbitration because it is resisted by the opposing party and foreclosed by existing law, the mere fact that the parties then proceed to engage in various forms of pretrial litigation does not compel the conclusion that the party has waived its right to arbitrate when a later change in the law permits arbitration." ( Id. at pp. 377-378, 173 Cal.Rptr.3d 289, 327 P.3d 129, italics added.)
It is significant that the defendant in Iskanian did what Plan B claims it reasonably decided not to do here, i.e., move to compel arbitration once the United States Supreme Court had decided Concepcion . In its initial arbitration demand letter to Sprunk in 2011, Plan B cited Concepcion in identifying "new case law" that permits individual arbitration "despite class allegations." While Plan B perhaps later reassessed the risk that its interpretation of Concepcion was wrong, that risk was based on lingering uncertainty, not on existing law that "foreclosed" its motion to compel. ( Iskanian, supra, 59 Cal.4th at pp. 377-378, 173 Cal.Rptr.3d 289, 327 P.3d 129.) In any event, regardless of the ultimate impact of Concepcion , Plan B had ample reason to believe that neither Gentry nor Horton I would affect the enforceability of its arbitration agreements in light of the existing case law and the lack of evidence from Sprunk concerning the Gentry factors.
c. Iskanian was irrelevant to whether the arbitration agreement that Sprunk signed contemplated class arbitration
A large part of the risk of class arbitration that existed at the time Plan B withdrew its motion to compel was not affected by the subsequent ruling in Iskanian . Much of the argument concerning class arbitration in the briefing *807 on Plan B's motion dealt with the question whether the version of the arbitration provision in Sprunk's employment agreement-which did not address class arbitration-could be interpreted to include an agreement to arbitrate on a class basis. The answer to that question was controlled by the United States Supreme Court decision in Stolt-Nielsen , which was decided in 2010. Plan B does not claim that Iskanian had any effect on the interpretation of Stolt-Nielsen .
Indeed, in opposing Plan B's motion to compel Sprunk argued that Concepcion was not even relevant because it concerned the enforceability of an express class action waiver, which Sprunk's agreement did not have. Whatever the ultimate merits of that argument,[10] it underscores that the *358 major issue concerning class arbitration raised by Plan B's motion-that is, whether the agreement itself permitted class arbitration-was not affected by the subsequent legal developments that Plan B claims changed the legal landscape and ultimately made its motion viable.
Thus, we conclude that Plan B's delay in bringing its motion to compel was not excused either by the lack of a certified class or by the state of the law.
d. The St. Agnes factors support the trial court's waiver finding
The circumstances of Plan B's delay in seeking arbitration against Sprunk support the trial court's waiver finding under the factors that our Supreme Court identified in St. Agnes . ( St. Agnes, supra, 31 Cal.4th at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727.) Having concluded that Plan B's delay cannot reasonably be explained either by the state of the law or the lack of a certified class, the period of the unexcused delay-nearly four years between the date that Sprunk filed her complaint on October 7, 2011, and the date that Plan B moved to compel arbitration on August 12, 2015-is far longer than in many cases finding waiver. (See, e.g., *808 Oregel, supra, 237 Cal.App.4th at p. 359, 187 Cal.Rptr.3d 436 [17 months' delay] ; Bower, supra, 232 Cal.App.4th at pp. 1039-1040, 181 Cal.Rptr.3d 729 [nine months' delay]; Sobremonte, supra, 61 Cal.App.4th at pp. 993-994, 72 Cal.Rptr.2d 43 [10 months' delay] ; Lewis v. Fletcher Jones Motor Cars, Inc. (2012) 205 Cal.App.4th 436, 446, 140 Cal.Rptr.3d 206 [nearly five months' delay].) Thus, the facts support the third St. Agnes factor of a delay for a long period before seeking a stay. ( St. Agnes, supra, 31 Cal.4th at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727.)
Litigation events during the long delay also support the first and fifth factors, conduct inconsistent with the right to arbitrate and important intervening steps. ( St. Agnes, supra, 31 Cal.4th at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727.) As discussed above, Plan B's strategic decision to delay until after class certification was inconsistent with an intent to arbitrate. In addition, while Plan B argues that it did not initiate much discovery during the delay, the class certification motion itself was a significant litigation event. The motion discussed Sprunk's factual and legal theories and disclosed her positions and evidence on disputed issues. (See Oregel, supra, 237 Cal.App.4th at p. 358, 187 Cal.Rptr.3d 436 [PacPizza waited to move for arbitration until the plaintiff had filed his class certification motion, "taking the opportunity to examine his motion and supporting evidence"].)
Plan B argues that the second St. Agnes factor-whether the litigation machinery has been substantially invoked before the party notified the opposing party of an intent to arbitrate ( St. Agnes, supra, 31 Cal.4th at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727 )-does not apply here because it repeatedly notified Sprunk and the trial court of its intent to arbitrate, including in its affirmative defenses, discovery responses, and its opposition to class certification.
*359 The trial court in fact noted that arbitration "was always on the table." However, as the trial court also observed, there is a difference between stating an intent and actually following through with asserting a right. That Plan B asserted arbitration as a defense was "merely one factor for the court to consider." ( Sobremonte, supra, 61 Cal.App.4th at p. 993, 72 Cal.Rptr.2d 43.) Identifying the arbitration right as an affirmative defense in pleadings "does not preclude a finding that subsequent conduct may cause a waiver of that right." ( Ibid. , citing Davis v. Continental Airlines, Inc. (1997) 59 Cal.App.4th 205, 217, 69 Cal.Rptr.2d 79.)
The fourth St. Agnes factor asks whether the defendant filed a counterclaim without asking for a stay. ( St. Agnes, supra, 31 Cal.4th at p. 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727.) Plan B did file a counterclaim. However, it does not appear that the trial court attached much weight to that event, and neither do we. Plan B filed the counterclaim against Sprunk and various fictional Roe defendants, but it did not attempt to amend the counterclaim to substitute particular class members for the *809 fictional defendants and it later dismissed the counterclaim. Thus, Plan B did not obtain any litigation advantage from its claim.
This leaves the sixth St. Agnes factor, prejudice, which is "critical in waiver determinations." ( St. Agnes, supra, 31 Cal.4th at p. 1203, 8 Cal.Rptr.3d 517, 82 P.3d 727.) The trial court appeared to find prejudice in part from the likelihood that, because of the nature of Plan B's business, individual plaintiffs would be reluctant to press arbitration claims. As Plan B points out, this concern would be present no matter when it asserted its arbitration right, and therefore does not show prejudice from its delay. We therefore do not give it any weight in assessing prejudice.
However, the trial court also found that Plan B's four-year delay in asserting its arbitration right was inconsistent with the principle that arbitration "is supposed to be quick." The court concluded that, if it granted the motion to compel, "it's going to be quite a while before these plaintiffs get their claims heard."
While "merely participating in litigation" does not cause a waiver (see St. Agnes, supra, 31 Cal.4th at p. 1203, 8 Cal.Rptr.3d 517, 82 P.3d 727 ), in Iskanian our Supreme Court cited a number of cases in which courts had interpreted St. Agnes to "allow consideration of the expenditure of time and money in determining prejudice where the delay is unreasonable." ( Iskanian, supra, 59 Cal.4th at p. 377, 173 Cal.Rptr.3d 289, 327 P.3d 129 ; see Oregel, supra, 237 Cal.App.4th at p. 361, 187 Cal.Rptr.3d 436 [noting that in Iskanian "the Supreme Court endorsed the line of cases that have interpreted St. Agnes to allow consideration of the expenditure of time and money in determining prejudice where the delay was unreasonable or unjustified"].) The court quoted Burton v. Cruise (2010) 190 Cal.App.4th 939, 118 Cal.Rptr.3d 613 for its conclusion that " 'a petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes." ' " ( Iskanian , at p. 377, 173 Cal.Rptr.3d 289, 327 P.3d 129, quoting Burton, at p. 948, 118 Cal.Rptr.3d 613.)
Here, the four-year delay resulted in Sprunk conducting class-related discovery and preparing and arguing an extensive class certification motion that never would have been necessary if individual arbitration had been ordered earlier in the case. Because Plan B's delay was unreasonable, we conclude that the trial court's finding of *360 prejudice is supported by sufficient evidence.[11] *810 DISPOSITION
The trial court's order denying the motions to compel arbitration is affirmed. Sprunk is entitled to her costs on appeal.
We concur:
CHANEY, Acting P.J.
JOHNSON, J.

This category of arbitration agreement stated in its entirety: "Arbitration: Any dispute, statutory, contractual or tort, arising out of this Contract or Entertainer's performances, the relationship between the parties, or any other dispute between the parties, shall be decided by binding Arbitration, pursuant to the Federal Arbitration Act, and shall be before a neutral arbitrator agreed upon by the parties who shall be permitted to award any relief available in a Court. Any award may be entered in any court having jurisdiction."

That category of arbitration agreement was identical to the prior version, but added language stating: "There is no right to class arbitration, and Entertainer must arbitrate individually. The Arbitrator shall have no power to consolidate claims of others or proceed as a class or representative action." It also added the sentence, "Employer shall pay any costs of arbitration required by applicable law."

In Iskanian , the court held that Concepcion abrogated the basis for the holding in Gentry . In Concepcion , the United States Supreme Court held that section 2 of the Federal Arbitration Act (the FAA, 9 U.S.C. § 1 et seq. ) preempted "California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable," overruling our Supreme Court's decision in Discover Bank v. Superior Court (2005) 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (Discover Bank ). (Concepcion, supra, 563 U.S. at pp. 340, 352, 131 S.Ct. 1740.) We discuss the chronology of these decisions in more detail below.

The difference between the two forms of the arbitration provision that the class members signed is immaterial to this analysis. The difference concerned whether the provision contained an explicit class arbitration waiver. The version that Sprunk signed did not include such an explicit waiver. Thus, if Plan B had succeeded in compelling individual arbitration against Sprunk, any potential class action plaintiff who had signed the other version of the arbitration agreement would have had an even weaker case to avoid individual arbitration.

This proviso is necessary because, as the trial court recognized, there is one scenario in which Plan B might have had a second chance to seek arbitration of some claims following class certification. If the trial court had denied a motion to arbitrate against Sprunk individually based upon the absence of an express class arbitration waiver in her agreement, Plan B might later have been able to file another motion to arbitrate against class members who had signed the other version of the agreement once the class had been certified. But that hypothetical possibility does not change the fact that a motion to arbitrate against Sprunk would likely have determined whether the claims at issue in this case should be arbitrated, probably for all class members, but at least for those class members who signed the same version of the agreement as Sprunk. Moreover, Plan B does not claim that it declined to seek arbitration against Sprunk because it only wanted to arbitrate against persons who signed the other version of the agreement. It could not credibly do so, as it ultimately filed motions below seeking arbitration against class members under both versions of the agreement.

Saleh did not involve an arbitration provision; it held that putative class members are not parties to a class action for purposes of enjoining them from proceeding with a separate federal action under the " 'first-to-file' " rule. (Saleh, supra, 353 F.Supp.2d at pp. 1090-1092.) Laguna did not involve an issue of waiver, but simply observed in the course of denying a discovery motion that a motion to compel arbitration against absent class members would be premature prior to certification. (Laguna, supra, at p. *3, 2011 U.S. Dist. LEXIS 81105 at p. *8.) In Mora , the court did not find that the defendant had delayed seeking arbitration against the named plaintiff or even that the named plaintiff was a party to an arbitration agreement. Indeed, from the court's summary of facts it appears that the named plaintiff was not. (Mora, supra, at pp. **1, 11, 14-15, 2012 U.S. Dist. LEXIS 49636 at pp. **4, 36, 46-47.)

Federal circuits are split on this issue, and the issue is currently before the United States Supreme Court. (See NLRB v. Alt. Entm't, Inc. (6th Cir. 2017) 858 F.3d 393, 405 ["Mandatory arbitration provisions that permit only individual arbitration of employment-related claims are illegal pursuant to the NLRA and unenforceable pursuant to the FAA's savings clause"]; Morris v. Ernst & Young, LLP (9th Cir. 2016) 834 F.3d 975, 985-986, cert. granted --- U.S. ----, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017) [arbitration provisions that mandate individual arbitration of employment-related claims violate the NLRA and fall within the FAA's saving clause]; Lewis v. Epic Sys. Corp. (7th Cir. 2016) 823 F.3d 1147, 1160, cert. granted --- U.S. ----, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017) [same]; Cellular Sales of Mo., LLC v. NLRB (8th Cir. 2016) 824 F.3d 772, 776 [arbitration provisions that mandate individual arbitration of employment-related claims do not violate the NLRA]; Murphy Oil, USA, Inc. v. NLRB (5th Cir. 2013) 737 F.3d 344, cert. granted Jan. 13, 2017, --- U.S. --- [137 S.Ct. 809] [upholding the Fifth Circuit's prior ruling in Horton II ].)

The parties in that case stipulated that the contract's silence meant that there was " 'no agreement' " on the issue of class arbitration. (Stolt-Nielsen, supra, 559 U.S. at p. 687, fn. 10, 130 S.Ct. 1758.)

The factors were that: "(1) potential individual recoveries are small; (2) there is a risk of employer retaliation; (3) absent class members are unaware of their rights; and (4) as a practical matter, only a class action can effectively compel employer overtime law compliance." (Nelsen, supra, 207 Cal.App.4th at p. 1132, 144 Cal.Rptr.3d 198.)

There is conflicting authority on whether Concepcion and Iskanian are relevant to employment arbitration agreements that do not contain a class action waiver. In Oregel, the court rejected the defendant's argument that a motion to compel arbitration would have been futile before Iskanian because the arbitration agreement at issue did not contain a waiver. The court concluded that the line of cases on which the defendant relied (i.e., Discover Bank, Gentry, Concepcion, and Iskanian ) involved the enforceability of class action waivers and therefore was not relevant. (Oregel, supra, 237 Cal.App.4th at pp. 357-358, 187 Cal.Rptr.3d 436.) In contrast, in Nelsen, which also concerned an arbitration agreement without an express waiver, the court held that "Gentry's application should not turn on whether an arbitration agreement bars class arbitration expressly or only impliedly." (Nelsen, supra, 207 Cal.App.4th at p. 1127, 144 Cal.Rptr.3d 198.)

Because we affirm the trial court's waiver finding, there is no need to consider Sprunk's argument that the arbitration provisions were unconscionable.