Filed 5/18/22  Baumgarten v. EOTFR CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION THREE

| | |
|---|---|
| SPENCER BAUMGARTEN, | B309612 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 20STCV24086 |
| v. | |
| EOTFR, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lia Martin, Judge. Affirmed.

Latham & Watkins, Marvin S. Putnam, Laura R. Washington, and Elizabeth A. Greenman for Defendants and Appellants.

Shegerian & Associates, Carney R. Shegerian and Jill McDonell for Plaintiff and Respondent.

# INTRODUCTION

Defendants EOTFR, LLC d/b/a ICM Partners (ICM), Cindy Ballard, and Chris Silbermann appeal from the trial court's order denying their motion to compel plaintiff Spencer Baumgarten to arbitrate his claims arising out of his employment at the company.[1] ICM contends the court erred in finding the parties did not enter into an agreement containing an arbitration provision. We affirm.

# FACTUAL BACKGROUND

## 1.    Baumgarten's Employment and First Lawsuit

In late 2016, Baumgarten signed a four-year contract to work as a partner at ICM in the company's motion picture department. Baumgarten stopped working at ICM in late summer or fall of 2019, not long after Ballard, the chief of ICM's human resources department, accused Baumgarten of defecating on the floor of a gender-neutral bathroom in ICM's New York office.

In October 2019, Baumgarten filed a complaint against ICM and Ballard (*Baumgarten I*). The original complaint in *Baumgarten I* asserted, among other claims, causes of action for violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and defamation. In that complaint, Baumgarten alleged that he negotiated a four-year contract with ICM to become a partner at the company.

---

[1] At times, we refer to ICM, Ballard, and Silbermann collectively as ICM.

ICM and Ballard moved to compel Baumgarten to arbitrate his claims. They argued Baumgarten signed a four-year "Member Agreement" and an "ICM Operating Agreement," before beginning his employment at the company. They also contended that the member agreement incorporated an arbitration provision included in the company's operating agreement. Baumgarten opposed the motion to compel arbitration. The court continued the hearing on the motion to allow Baumgarten to produce evidence showing he never agreed to arbitrate any dispute with ICM.

After the court continued the hearing on the motion to compel arbitration, Baumgarten filed a first amended complaint. Baumgarten later filed a declaration in which he claimed he never saw or signed any agreement that included an arbitration provision before he joined ICM.

In June 2020, Baumgarten dismissed the *Baumgarten I* lawsuit.[2]

## 2. The Second Lawsuit and Motion to Compel Arbitration

In late June 2020, Baumgarten filed a new lawsuit against ICM, Ballard, and Silbermann.[3] The operative complaint asserts 15 causes of action, including claims for defamation and violation of FEHA, as well as claims for declaratory relief establishing that

---

[2] On November 12, 2021, ICM filed a request for judicial notice of several documents and court filings from *Baumgarten I*. We deny the request because those documents are duplicative of other documents included in the appellate record or are unnecessary to our analysis.

[3] This case was eventually reassigned to the same judge the parties appeared before in *Baumgarten I*. The new lawsuit added Silbermann as a defendant; he was sued as a managing partner of ICM.

3

the parties never agreed to arbitrate their disputes and that the purported arbitration provision was unenforceable. Unlike in his original complaint filed in *Baumgarten I*, Baumgarten omitted any allegations that he negotiated a four-year contract with ICM before his employment began.

In August 2020, ICM, Ballard, and Silbermann moved to compel Baumgarten to arbitrate his claims against them. They asserted Baumgarten signed a "Member Agreement" and an "Operating Agreement" when he accepted employment with ICM. They also asserted that the member agreement established Baumgarten's pay structure and defines several terms of Baumgarten's membership with the company. Further, the entire member agreement was incorporated into the operating agreement, and several provisions of the operating agreement, including Section 16.6, which is an arbitration provision, were incorporated into the member agreement. ICM quoted verbatim in the motion the terms of Section 16.6, the operating agreement's arbitration provision. ICM argued that "Baumgarten's membership at [the firm] was effective upon the execution of his Member Agreement *and* the Operating Agreement." (Italics added.) Although they were not signatories to either agreement, Ballard and Silbermann argued they were entitled to enforce the parties' arbitration provision as ICM's agents.

In support of their motion to compel arbitration, ICM filed a declaration executed by Richard Levy, ICM's general counsel. Levy asserted he was involved in negotiations with Baumgarten's lawyer over the member agreement and the operating agreement, including explaining how the operating agreement worked for all members of ICM. Levy claimed Baumgarten signed both

agreements at the conclusion of negotiations.[4] Levy attached to his declaration what he claimed was the signature page from the operating agreement that Baumgarten signed. The signature page includes what appears to be Baumgarten's signature, a footer stating "Signature Page – Operating Agreement," and the page number "3." Levy didn't include the rest of the agreement to which the signature page was purportedly attached, nor did ICM otherwise provide the rest of the agreement as part of their initial papers supporting the motion to compel arbitration.

ICM also filed a declaration by one of the lawyers representing the company in this lawsuit. The lawyer attached to her declaration several documents from *Baumgarten I*.

In opposition to the motion to compel arbitration, Baumgarten objected to most of ICM's evidence and argued he never signed an agreement containing an arbitration provision or otherwise agreed to arbitrate any claim arising out of his employment at ICM. Baumgarten also argued that, among other things, the arbitration provision quoted in ICM's moving papers was procedurally and substantively unconscionable and did not apply to any statutory or non-contract claims Baumgarten asserted against the company.

In support of his opposition, Baumgarten filed a declaration in which he claimed he was never given the opportunity to negotiate the terms of an arbitration provision and he never "knowingly or willingly agree[d] to arbitrate claims related to [his] employment." According to Baumgarten, when he signed his new hire paperwork, he was "provided with paperwork that did

---

[4] Levy didn't testify that he was present when Baumgarten signed the agreements.

not contain an arbitration agreement for claims related to [his] employment." Baumgarten acknowledged the signature on the signature page attached to Levy's declaration appeared to be his, but he could not recall when he signed it. He "[did] not recall signing and [did] not believe [he] signed any arbitration agreement with ICM."

Warren Dern, the lawyer who helped negotiate the terms of Baumgarten's employment at ICM, submitted a declaration in support of Baumgarten's opposition. Dern negotiated only Baumgarten's "salary, benefits, and stock options" without "receiving an Operating Agreement," and he never otherwise reviewed an operating agreement before Baumgarten started working at ICM. Dern's conversations with Levy "were limited and communications centered on Baumgarten's salary package and guaranteed term of employment." Dern did not negotiate or comment on "the entirety of any agreement or contract ICM wanted Baumgarten to sign," nor did Dern discuss an arbitration agreement during his negotiations over Baumgarten's salary package.

Baumgarten also filed a copy of a "Sixth Amended and Restated Operating Agreement of EOTFR, LLC," dated January 1, 2019, signed by one of ICM's managing partners but no one else. The 2019 agreement includes a Section 16.6, which contains an arbitration provision identical to the one ICM quoted in their motion to compel arbitration. Baumgarten argued he couldn't have agreed to arbitrate under the terms of the 2019 agreement because that agreement was never presented to him before he joined the company in 2016.

In support of their reply, ICM provided a copy of a "T2-B Member Agreement" (Member Agreement) with Baumgarten's

signature. The Member Agreement is a four-year contract that established, among other things, Baumgarten's pay structure. The Member Agreement makes several references to an "Amended and Restated Operating Agreement … dated as of April 23, 2015, as amended on May 2, 2016 …" (April 2015 Operating Agreement). The Member Agreement states that it is incorporated into the April 2015 Operating Agreement and incorporates several sections of the operating agreement, including Section 16.6. Section 12 of the Member Agreement, entitled "Effectiveness," states that the Member Agreement "shall be effective as of the Effective Date, subject to, and conditioned upon, the execution of [the Member Agreement] and the Operating Agreement … by [Spencer Baumgarten] and [ICM]."

In addition to the Member Agreement, ICM provided an unsigned copy of the April 2015 Operating Agreement. That agreement includes a watermark with the name "Baumgarten" across every page and a footer that is different from the one appearing on the signature page that Levy attached to his declaration. The April 2015 Operating Agreement includes a Section 16.6, which contains an arbitration provision identical to the one ICM quoted in the motion to compel arbitration. ICM also provided a copy of a November 18, 2016 email from Robin Weitz, an ICM employee, to Baumgarten and Dern stating that a copy of the operating agreement was attached to the email.

Baumgarten objected to the evidence ICM filed in support of their reply as, among other things, untimely.

On November 24, 2020, the court issued a tentative ruling on ICM's motion to compel arbitration. The court refused to consider the evidence ICM submitted in support of their reply

7

"for due process reasons," while noting that none of the evidence included a complete operating agreement that was signed by Baumgarten. The court explained that because Baumgarten denied signing any operating agreement, and because ICM provided only a signature page that the company claimed Baumgarten signed without providing the rest of the agreement, it could not determine whether an arbitration provision was contained in any agreement Baumgarten signed. The court ordered ICM to provide an "unredacted complete signed copy of the operating agreement [Baumgarten] and ICM signed in 2016," otherwise it would deny ICM's motion to compel arbitration.[5]

On December 1, 2020, ICM filed a "Notice of Lodging" and a second declaration executed by Levy, to which he attached five exhibits. The first exhibit is another copy of the Member Agreement that includes Baumgarten's signature. The second exhibit is another copy of the unsigned April 2015 Operating Agreement that includes the "Baumgarten" watermark on every page, which Levy stated was the agreement "in effect in November 2016." The third exhibit is a copy of a November 18, 2016 email from Weitz to Dern stating that a nondisclosure agreement, a member agreement, and a signature page to an operating agreement, all of which Weitz claimed were signed by Baumgarten, were attached to the email. The fourth exhibit is a copy of what appears to be the same signature page that Levy

---

[5] In its tentative ruling, the court also addressed and rejected Baumgarten's arguments that the arbitration provision quoted in ICM's moving papers was procedurally and substantively unconscionable. In addition, the court found that, in the event the parties are compelled to arbitrate, any issues concerning the scope of the arbitration provision should be left to the arbitrator.

attached to his declaration filed in support of ICM's initial moving papers. Notably, although the signature page appears to include Baumgarten's signature, it does not include a watermark like the one included on the copy of the unsigned April 2015 Operating Agreement, and it includes a different footer from the one included in the unsigned April 2015 Operating Agreement. The fifth exhibit is a copy of an undated signature page with Levy's signature that Levy claims was attached to "the Operating Agreement." The document with Levy's signature includes the same footer as the copy of the unsigned April 2015 Operating Agreement, but a different footer from the one included on the page with Baumgarten's signature, and it does not include the "Baumgarten" watermark.

Baumgarten objected to Levy's declaration and all the exhibits attached to the notice of lodging.

On December 2, 2020, the day after ICM filed their notice of lodging exhibits in response to the court's November 24, 2020 tentative ruling, the court denied ICM's motion to compel arbitration for the reasons stated in its previous order and tentative ruling.

ICM appeals from the order denying their motion to compel arbitration.

## DISCUSSION

### 1. Applicable Law and Standard of Review

California and federal law favor arbitration. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.) That policy does not apply, however, where the parties have not agreed to arbitrate their dispute. (*Espejo v. Southern*

9

*California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1054.)

Under Code of Civil Procedure section 1281.2,[6] a court must grant a petition to compel arbitration "if it determines that an agreement to arbitrate the controversy exists." The court makes this determination in a summary proceeding (§ 1290.2), sitting " 'as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence … to reach a final determination.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164 (*Gamboa*), quoting *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) The party seeking to compel arbitration carries the burden of persuasion to show, by a preponderance of the evidence, that the parties agreed to arbitrate their dispute. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)

The summary procedure under section 1290.2 involves a three-step burden shifting process. (*Gamboa, supra*, 72 Cal.App.5th at p. 165.) The moving party carries the initial burden to present prima facie evidence of an arbitration agreement. (*Ibid.*) The moving party can attach to its motion a copy of the arbitration agreement "purporting to bear the [opposing party's] signature." (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543–544 (*Bannister*).) Or the moving party can set forth verbatim in its motion the agreement's provisions. (*Gamboa*, at p. 165; see also Cal. Rules of Court, rule 3.1330 ["The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference."].) At this step, "it is not necessary

---

[6] Undesignated statutory references are to the Code of Civil Procedure.

10

to follow the normal procedures of document authentication." (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218 (*Condee*).) If the moving party establishes the existence of an arbitration agreement and the nonmoving party doesn't challenge the agreement's validity or otherwise establish an exception to arbitration, the court must order the parties to arbitrate their dispute. (*Id.* at pp. 218–219.)

Once the moving party meets its prima facie burden of proving the arbitration agreement's existence, the nonmoving party carries the burden of producing evidence challenging the agreement's validity or establishing another defense to enforcing the agreement. (*Gamboa, supra,* 72 Cal.App.5th at p. 165.) The nonmoving party can challenge the arbitration agreement's validity by testifying or declaring under oath that he never signed or saw the agreement or does not remember seeing or signing the agreement. (*Ibid.*; see, e.g., *Bannister, supra,* 64 Cal.App.5th at p. 546 [employee declared she never saw or signed the arbitration agreement]; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 (*Ruiz*) [although employee didn't dispute the signature on the agreement was his, he placed the arbitration agreement's authenticity at issue by claiming he could not recall signing the agreement and would not have signed it had he seen it].)

If the nonmoving party produces evidence challenging the agreement's authenticity, the burden of proof shifts back to the moving party to prove that there is a valid arbitration agreement between the parties. (*Gamboa, supra,* 72 Cal.App.5th at pp. 165–166.) Generally, when the nonmoving party challenges the agreement's authenticity, the court should allow the moving party to submit on reply evidence establishing the agreement's

11

validity since the moving party was not required to submit such evidence at the initial stage when making a prima facie showing of the agreement's existence. (See *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 794 [court properly admitted moving party's evidence submitted on reply because nonmoving party placed the arbitration agreement's validity at issue in his opposition papers]; see also *Condee*, *supra*, 88 Cal.App.4th at p. 219 [at the first step of the burden-shifting process, California Rules of Court, rule 3.1330 "does not require the petitioner to introduce the agreement into evidence or provide the court with anything more than a copy or recitation of its terms"].)

Generally, we review a court's order denying a motion to compel arbitration for abuse of discretion, unless the appeal raises only a pure question of law, in which case we apply a de novo standard of review. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.) Where the court's decision rests on findings of fact, we review those findings for substantial evidence. (*Ibid*.)

But where, as here, the court's decision is based on a finding that the moving party failed to prove a valid arbitration agreement exists, we must determine whether the court's ruling was erroneous as a matter of law. (*Gamboa*, *supra*, 72 Cal.App.5th at p. 166, quoting *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).) Specifically, we must determine whether the moving party's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding in the moving party's favor. (*Fabian*, at p. 1067.) Unless the court made specific findings of fact in favor of the moving party, we must presume the court

found that party's evidence lacked sufficient weight and credibility to carry the party's burden of proof. (*Ibid*.) We also can't reevaluate witness credibility or reweigh the competing evidence. (*Ibid*.) In other words, all conflicts generally must be resolved in favor of the court's ruling. (*Ibid*.)

**2.    The court did not err in denying ICM's motion to compel arbitration.**

While not explicit, the court's ruling makes clear that it found ICM met their first-step burden to make a prima-facie showing that ICM and Baumgarten agreed to arbitrate any dispute arising out of Baumgarten's employment at the company. The court also found Baumgarten met his second-step burden when it explained that he "denie[d] signing" any operating agreement that included an arbitration provision and stated that it could not determine whether an arbitration provision was contained in any operating agreement that Baumgarten signed.[7] Substantial evidence supports both of those findings.

_____

[7] ICM asserts that the court "*did not* find that Mr. Baumgarten met his [second-step] burden." We disagree. While the court didn't use the term "find" or some variation of it in its tentative ruling, the court clearly found Baumgarten met his evidentiary burden to raise an issue as to whether he ever signed an arbitration agreement or otherwise agreed to arbitrate his dispute with ICM. That is, to the extent the court didn't make an express finding that Baumgarten met his second-step burden, we presume such an implied finding was made based on the court's conclusion that ICM didn't prove Baumgarten agreed to arbitrate his dispute with the company. (*Ruiz, supra*, 232 Cal.App.4th at p. 842 [where a statement of decision was available but not requested, "we apply the doctrine of implied findings and presume the court made all factual findings necessary to support its order—to the extent substantial evidence supports such findings"].)

13

ICM met their initial burden by quoting in their motion to compel arbitration the terms of the arbitration provision they claimed was included in an operating agreement that Baumgarten signed and incorporated into a member agreement that Baumgarten also signed. (Cal. Rules of Court, rule 3.1330.) At the second step, Baumgarten met his burden by filing a sworn declaration in which he asserted that, although the signature on the page attached to Levy's declaration appeared to be his, he could not recall signing any agreement that included an arbitration provision and he did not otherwise agree to arbitrate his claims against ICM.[8] (*Ruiz, supra*, 232 Cal.App.4th at p. 846.) The burden, therefore, shifted back to ICM to produce evidence proving the existence of a valid arbitration agreement between

---

[8] We reject ICM's assertion that the court couldn't have found Baumgarten met his second-step burden because the only evidence he submitted was a "self-serving declaration as to his memory years after he signed his onboarding agreements with ICM." The case law in this area is clear that a party opposing arbitration can raise a factual dispute as to the validity of an arbitration agreement by filing a sworn declaration in which that party claims he did not sign, could not recall signing, or otherwise did not agree to be bound by, an agreement including or incorporating an arbitration provision. (See, e.g., *Gamboa, supra*, 72 Cal.App.5th at p. 165; *Bannister, supra*, 64 Cal.App.5th at p. 546; *Ruiz, supra*, 232 Cal.App.4th at p. 846; see also *Fabian, supra*, 42 Cal.App.5th at p. 1067 ["Because Fabian declared that she did not sign the Contract, however, Renovate then had 'the burden of proving by a preponderance of the evidence that the … signature was authentic.' "].) This rule applies even where the party acknowledges a signature appears to be his but declares that he cannot recall either signing an agreement that included an arbitration provision or agreeing to be bound by such a provision. (*Ruiz*, at p. 846.)

Baumgarten and the company. (*Fabian*, *supra*, 42 Cal.App.5th at p. 1067.) As we explain, ICM didn't meet that burden. Put another way, ICM cannot show the evidence they produced below compelled a finding, as a matter of law, that Baumgarten agreed to arbitrate his disputes with the company. (*Gamboa*, *supra*, 72 Cal.App.5th at p. 166.)

In its tentative ruling, the court ordered ICM to provide a complete copy of the April 2015 Operating Agreement signed by Baumgarten, otherwise it would deny ICM's motion to compel arbitration. Without objecting to the court's tentative ruling, ICM expressly agreed to comply with the court's order to produce a complete signed copy of the April 2015 Operating Agreement. But in the end, ICM never filed a complete copy of the April 2015 Operating Agreement that was signed by Baumgarten, or a signed copy of any other operating agreement that included an arbitration provision. Instead, ICM filed another copy of the unsigned April 2015 Operating Agreement and another copy of the signature page containing Baumgarten's signature without any attached agreement. Because ICM failed to comply with the court's tentative ruling—a ruling they never objected to—the court properly denied ICM's motion to compel arbitration for that reason alone. (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 362 (*Copley Press*) [a party cannot claim error on appeal when that party expressly or implicitly agreed or acquiesced to the ruling it now claims is erroneous].) Regardless, the fact that ICM produced a lone signature page containing Baumgarten's signature and an unsigned agreement containing an arbitration provision, did not necessarily establish that Baumgarten agreed to arbitrate his claims against the company.

15

ICM insists Levy's declarations connected the dots between the lone signature page and an operating agreement containing an arbitration provision. We disagree. While Levy claimed the signature page was part of an "Operating Agreement," he never identified which operating agreement the signature page belonged to or otherwise stated that the corresponding operating agreement contained the same arbitration provision incorporated into the Member Agreement and quoted in ICM's motion to compel arbitration. "[I]t is not sufficient for the party seeking to compel arbitration to show the parties generally agreed to arbitrate their disputes by incorporating some arbitration provision into their contract. Rather, the party must establish the precise arbitration provision the parties incorporated into their agreement to govern their disputes." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 68.) Levy's declarations failed to establish the precise arbitration provision by which Baumgarten agreed to be bound.

Even if Levy's declarations could be interpreted to state that the attached signature page was originally part of the April 2015 Operating Agreement or another operating agreement including an arbitration provision, the court reasonably could have discredited that testimony for several reasons. First, while Levy stated he was "involved in negotiations relating to Spencer Baumgarten's contract" and claimed that Baumgarten signed a member agreement and operating agreement "[a]t the conclusion of negotiations," Levy never testified that he was present when Baumgarten signed the agreements or how he otherwise confirmed that Baumgarten signed them.

Second, and more importantly, there were notable differences between the signature page attached to Levy's

16

declarations and the unsigned April 2015 Operating Agreement that ICM claims is the same agreement that Baumgarten signed. Unlike every page of the unsigned April 2015 Operating Agreement, the signature page attached to Levy's declarations did not contain a "Baumgarten" watermark. In addition, the signature page attached to Levy's declarations included a different footer from the one included on the signature page of the unsigned April 2015 Operating Agreement. ICM made no effort to explain these discrepancies below. Based on these obvious discrepancies, the court reasonably could have found that the signature page attached to Levy's declarations did not correspond to the April 2015 Operating Agreement. And ICM did not otherwise produce any evidence conclusively establishing the signature page belonged to an agreement that included an arbitration provision. (*Fabian*, *supra*, 42 Cal.App.5th at p. 1067.)

ICM next contends the court should have compelled Baumgarten to arbitrate his claims against the company under the doctrine of incorporation. Specifically, ICM insists that because the Member Agreement, which Baumgarten signed, incorporates by reference the arbitration provision included in the April 2015 Operating Agreement, Baumgarten necessarily agreed to arbitrate any dispute he has with the company related to his employment. In other words, ICM claims it is immaterial whether Baumgarten signed the April 2015 Operating Agreement, or any other operating agreement, because an arbitration provision was incorporated into the Member Agreement that Baumgarten signed. We disagree.

As a preliminary matter, ICM has forfeited this claim of error on appeal. In their motion to compel arbitration, ICM asserted that Baumgarten signed both the Member Agreement

17

and "the ICM Operating Agreement." ICM also claimed that "Baumgarten's membership at ICM was effective upon the execution of his Member Agreement and the Operating Agreement—both of which he signed." Consistent with ICM's representations, the court's tentative ruling makes clear that it found that while Baumgarten may have signed the Member Agreement, ICM needed to prove that Baumgarten also signed an operating agreement that included an arbitration provision to establish a valid arbitration agreement between the parties. The court ordered ICM to file additional evidence—i.e., a complete copy of the April 2015 Operating Agreement that ICM claimed Baumgarten signed—to prove Baumgarten was required to arbitrate his claims against the company, otherwise the court would deny ICM's motion to compel arbitration. At the hearing on the motion, ICM's counsel stated, without objecting to the court's ruling, "We will submit on the tentative and per your tentative lodge the agreement with the court. We believe that Mr. Baumgarten signed the agreement, and we can do that so that the court has it."

By arguing the court should have compelled Baumgarten to arbitrate based solely on the fact that he signed the Member Agreement, ICM challenges the court's ruling that the company was required to also prove that Baumgarten signed the April 2015 Operating Agreement. By not objecting to the court's tentative ruling and expressly agreeing to provide the court with a complete copy of the April 2015 Operating Agreement signed by Baumgarten, ICM cannot now complain on appeal that the court erred in requiring such proof before it could grant the company's motion to compel arbitration. " '[A]n appellant waives [the] right to attack error by expressly or implicitly agreeing or acquiescing

18

at trial to the ruling or procedure objected to on appeal.' " (*Copley Press*, *supra*, 13 Cal.App.5th at p. 362.)

In any event, this claim fails on the merits. To be sure, a party can be compelled to arbitrate a dispute even if the agreement the party signed does not expressly provide for arbitration, so long as the signed agreement incorporates by reference another document that includes an arbitration provision. (See *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 705; *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271 ["An agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference."].) And, as ICM correctly points out, the Member Agreement that Baumgarten signed includes a provision (Section 14) that incorporates the arbitration provision included in Section 16.6 of the April 2015 Operating Agreement. But what ICM fails to point out in their opening brief (and did not address below) is that the Member Agreement also includes Section 12, which provides that the Member Agreement doesn't become effective *unless* Baumgarten and ICM sign *both* that agreement *and* the April 2015 Operating Agreement.

Thus, by the Member Agreement's terms, Section 14's incorporation by reference of an arbitration provision into the Member Agreement could only go into effect once Baumgarten executed not just the Member Agreement, but also the April 2015 Operating Agreement. In other words, to establish Baumgarten is bound by any arbitration provision incorporated into the Member Agreement, ICM needed to prove Baumgarten signed the April 2015 Operating Agreement. As we explained above, ICM hasn't shown the court erred when it found the company did not prove

Baumgarten signed the April 2015 Operating Agreement. The court, therefore, properly refused to apply the doctrine of incorporation to compel Baumgarten to arbitrate his dispute with ICM.

Finally, ICM contends the court abused its discretion when it refused to consider evidence that ICM submitted in support of their reply. We need not decide whether the court should have considered that evidence because, assuming the court did err, ICM has not shown the error was prejudicial. Two of the exhibits that ICM filed on reply—a copy of the signed Member Agreement and a copy of the unsigned April 2015 Operating Agreement— were included in ICM's notice of lodging filed in response to the court's tentative ruling. Thus, those exhibits were duplicative of other evidence the court considered before denying the motion to compel arbitration. As for the third exhibit—an email from Weitz to Baumgarten and Dern in which Weitz claimed a copy of the operating agreement was attached—the email wouldn't establish Baumgarten signed the April 2015 Operating Agreement. At most, the email shows Baumgarten received a copy of an operating agreement, but it does not establish that he signed an operating agreement containing an arbitration provision. Finally, nothing in the declaration accompanying the exhibits establishes that Baumgarten signed the April 2015 Operating Agreement.[9]

---

[9] The declaration was executed by Joseph R. Trofino, Deputy General Counsel for ICM. Trofino testified that he had personal knowledge of all matters stated in his declaration. Trofino never claimed, however, that Baumgarten signed the April 2015 Operating Agreement or any other operating agreement that included an arbitration provision. Rather, he stated that a copy of the April 2015 Operating Agreement

Thus, any error by the court in refusing to consider the evidence ICM submitted on reply was harmless.

In short, ICM has not shown that the evidence presented below required the court, as a matter of law, to find Baumgarten agreed to arbitrate his dispute with ICM. (*Fabian, supra*, 42 Cal.App.5th at p. 1067.)[10] The court, therefore, did not err in denying ICM's motion to compel arbitration.

## DISPOSITION

The order denying ICM's motion to compel arbitration is affirmed. Spencer Baumgarten shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

KALRA, J.[*]

---

was emailed to Baumgarten and otherwise only identified the documents that were attached to his declaration.

[10] In light of our conclusion, we do not address the parties' other contentions.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.