Filed 3/28/23  Menjivar v. Field Fresh Foods CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERICK RIVERA MENJIVAR, | B321444 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 21STCV23204) |
| FIELD FRESH FOODS INCORPORATED, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Reversed and remanded for further proceedings.

McDermott Will & Emery, Maria C. Rodriguez, Marjorie C. Soto, and Ashley N. Attia for Defendant and Appellant.

Proxy Law Firm, Rana Nader and Hengameh Safaei for Plaintiff and Respondent.

Defendant Field Fresh Foods Incorporated (Field Fresh) appeals from the trial court's order denying its motion to compel arbitration of sexual harassment claims brought by plaintiff Erick Rivera Menjivar. We reverse and remand for further proceedings in light of a change in applicable law that took place after the trial court issued its decision.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 2020, Field Fresh hired Menjivar, a monolingual Spanish speaker who was then 21 years old, to clean and sanitize the company's equipment at its Gardena warehouse.[1] In April 2021, Menjivar quit his job and two months later, filed a lawsuit against Field Fresh and his former supervisor, raising several claims under California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and other related provisions.

Menjivar's complaint alleged that during his employment with Field Fresh, Menjivar was subject to sexual harassment by his supervisor, and, despite reporting it to management, the harassment continued until it escalated into sexual assault and battery. The complaint alleged that Menjivar resigned from his employment with Field Fresh because he could no longer endure the harassment.

---

[1] For completeness, we note that Menjivar's complaint alleges that Field Fresh hired him in January 2019. For purposes of this appeal, the parties do not dispute that Menjivar started his employment with Field Fresh in January 2020.

In August 2021, Field Fresh moved to compel arbitration. Attached to the motion was a declaration by Marco Prudente, Field Fresh's "Safety Coordinator," who attested to several facts based upon his "own personal knowledge, or knowledge based upon [his] review of company records." Prudente averred that on Menjivar's first day of work, Menjivar "reviewed and signed" a four-page Spanish-language agreement to arbitrate (the agreement), a copy of which was attached to Prudente's declaration and appeared to bear the initials "E.R." on each page and a signature on the last page.[2]

Menjivar filed an opposition to Field Fresh's motion to compel in January 2022. In a declaration, Menjivar attested to the following facts: On his first day of work, Menjivar reported to the office of Field Fresh's human resources manager, whose name was "Maria" (last name unknown). One of Maria's assistants gave Menjivar a stack of documents and informed him that he was required to complete and sign all of the "paperwork" before he could begin employment with Field Fresh. He was given less than 30 minutes to complete and sign all of the documents, and had no opportunity to ask any questions. Menjivar did not know that the paperwork Field Fresh required him to sign "included a waiver of [his] right to file a case in court." Menjivar reviewed a copy of the agreement "[i]n connection with this case" and acknowledged that the copy "contains [his] signature." Menjivar also filed evidentiary objections to the portion of Prudente's declaration that stated Menjivar "reviewed and signed a physical

---

[2]     An unsigned English translation of the agreement was also attached to the Prudente declaration.

copy of Field Fresh's Arbitration Agreement" as lacking foundation.

In February 2022, the trial court issued a tentative order sustaining Menjivar's evidentiary objection on the ground that Field Fresh had failed to authenticate the document that it alleged was a valid arbitration agreement between the parties. The court indicated that it would continue the hearing on the motion to compel to give Field Fresh an opportunity to sufficiently authenticate the document. The court went on to analyze the merits of Field Fresh's motion to compel, and tentatively granted the motion with the caveat that Field Fresh would first need to sufficiently authenticate the document that purported to be the underlying arbitration agreement. The court set a briefing schedule on the issue of authentication only and continued the hearing on the motion to compel.

In March 2022, Field Fresh filed a supplemental declaration from Prudente, in which he averred: "In my position [as Safety Coordinator], I am familiar with Field Fresh's employment forms and policies and I have access to all current and prior employee personnel files containing these forms and policies." Prudente further stated that "[i]t is Field Fresh's policy to enter into binding arbitration agreements with its employees, and pursuant to this policy, employees sign binding arbitration agreements with Field Fresh when hired. Once signed, the agreement is placed in the employee's personnel file where it becomes a permanent part of the employee's employment record." According to Prudente, he had "access to and ha[d] reviewed" Menjivar's personnel file, the file was maintained in Field Fresh's "normal course of its business," and the previously produced

4

Spanish-language arbitration agreement "was recovered" from Menjivar's file.

Later that month, Menjivar filed a supplemental declaration averring that he did not recall seeing or signing the agreement, other than in connection with reviewing the document for the purposes of this case. Menjivar also objected to Prudente's statement that Menjivar "signed the Agreement" for a lack of foundation, and to his statement that the attached copy of the agreement was a "true and correct copy" for lack of foundation and authentication. According to Menjivar, because Prudente did not state he was a duly authorized custodian of records or other qualified witness with authority to certify the agreement, the agreement was inadmissible.

In April 2022, after hearing argument from the parties, the trial court denied Field Fresh's motion to compel in a written decision. The court held that Field Fresh failed to meet its burden of authenticating the agreement because the supplemental declaration by Prudente only established that the agreement came from Menjivar's file, but did not address the circumstances of its execution. In other words, Field Fresh did not provide evidence of a factual scenario, based on a declarant's personal knowledge, where Menjivar "would necessarily have been presented a copy of the arbitration agreement as a condition of employment, and that it would have been placed in Plaintiff's file after being signed."

Field Fresh timely appealed from the April 2022 order. After the parties filed their briefs on the merits, we invited them to file supplemental briefing to address the decision in *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747 (*Iyere*), which was issued while the matter was pending appeal.

# DISCUSSION

## A. Applicable law and standard of review

California and federal law favor arbitration. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.) That policy does not apply, however, where the parties have not agreed to arbitrate their dispute. (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1054.)

Before granting a motion to compel arbitration, a trial court must first "determine[ ] that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2.) The court makes this determination in a summary proceeding (Code Civ. Proc., § 1290.2), sitting "as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) The party seeking to compel arbitration carries the burden of persuasion to show, by a preponderance of the evidence, that the parties agreed to arbitrate their dispute. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)

The summary procedure under Code of Civil Procedure, section 1290.2 involves a three-step burden shifting framework. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).) In the first step, the party moving to compel arbitration carries the initial burden to present prima facie evidence of an arbitration agreement. (*Ibid.*) The moving party can attach to its motion a copy of the arbitration agreement "purporting to bear the [opposing party's] signature." (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543–544.)

6

Or the moving party can set forth verbatim in its motion the agreement's provisions. (*Gamboa,* at p. 165; see also Cal. Rules of Court, rule 3.1330 ["The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference."].) At this initial step, "it is not necessary to follow the normal procedures of document authentication." (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218.) If the moving party establishes the existence of an arbitration agreement, and the nonmoving party does not challenge the agreement's validity or otherwise establish an exception to arbitration, the court must order the parties to arbitrate their dispute. (*Id.* at pp. 218–219.)

If, on the other hand, the nonmoving party does challenge the existence of a valid arbitration agreement between the parties, then the second step is triggered. In this second step, "the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa, supra,* 72 Cal.App.5th at p. 165; see also *Iyere, supra,* 87 Cal.App.5th at p. 755 ["If the movant bears its initial burden, the burden shifts to the party opposing arbitration to identify a factual dispute as to the agreement's existence—in this instance, by disputing the authenticity of their signatures"].) At this second step, the "opponent need not *prove* that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent . . . ." (*Iyere,* at p. 755.)

If the party opposing arbitration meets its burden of producing evidence to challenge the authenticity of the agreement, then in the third step, the burden of proof shifts back to the moving party to "establish with admissible evidence a valid

7

arbitration agreement between the parties." (*Gamboa, supra*, 72 Cal.App.5th at p. 165.) "The burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Id.* at pp. 165–166.) In this third step, the moving party may submit reply evidence establishing the agreement's validity. (See *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 794 [court properly admitted moving party's evidence submitted on reply because nonmoving party placed the arbitration agreement's validity at issue in his opposition papers].)

Generally, we review a court's order denying a motion to compel arbitration for abuse of discretion, unless the appeal raises only a pure question of law, which we review de novo. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.)

## B. Menjivar did not meet his burden of challenging the authenticity of the agreement at step two of the burden shifting framework

As we discussed in the section summarizing the proceedings below, the parties appeared to have focused exclusively on whether Field Fresh carried its burden of establishing with admissible evidence the existence of a valid arbitration agreement at step *three* of the burden shifting framework. The court found that Field Fresh failed to carry its burden at this step and thus, denied the motion to compel.

Implicit in the court's ruling that Field Fresh failed to carry its burden at step three is the necessary finding that Menjivar carried his burden at step two to challenge the authenticity of the arbitration agreement. There are two cases that squarely address whether Menjivar sufficiently met his burden at step

8

two: *Gamboa, supra,* 72 Cal.App.5th 158, and *Iyere, supra,* 87 Cal.App.5th 747.

      *Gamboa* involved an arbitration agreement with a handwritten signature. The party opposing arbitration proffered a declaration stating under penalty of perjury that "she did not recall the agreement and would not have signed it if she had been aware of it." (*Gamboa, supra,* 72 Cal.App.5th at p. 167.) The appellate court held that this evidence was sufficient to satisfy the party's burden at step two to create a factual dispute as to the authenticity of the agreement. (*Id.* at p. 168.)

      *Iyere,* which was decided after the trial court issued its decision and while this matter was pending on appeal, also involved an arbitration agreement with a handwritten signature. The party opposing arbitration in *Iyere* similarly proffered a declaration stating that he did not remember signing the agreement and would not have done so had he understood he was agreeing to arbitration. (*Iyere, supra,* 87 Cal.App.5th at p. 753.) In reversing the trial court's order denying the motion to compel, the appellate court expressly disagreed with *Gamboa* and held that in the context of an arbitration agreement bearing a handwritten signature, merely testifying or declaring under oath that a party does not remember signing an arbitration agreement does not create a factual dispute as to the authenticity of the agreement at the second step of the burden shifting process. (See *Iyere,* at p. 758 ["the fact that that person does not recall signing the agreement neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed"].)

      We agree with *Iyere* insofar as the decision holds that a party who is challenging an agreement appearing to bear their

9

handwritten signature must present more evidence than simply testifying or declaring under penalty of perjury that they do not remember signing the agreement to create a factual dispute regarding the authenticity of the agreement. For instance, the party could testify or state under penalty of perjury that the proffered signature does not resemble their actual handwritten signature, or that they did not sign the agreement, or, as suggested by *Iyere*, that the signature is "inauthentic or forged."[3] (*Iyere*, *supra*, 87 Cal.App.5th at p. 758.)

Here, the arbitration agreement proffered by Field Fresh bears the initials "E.R." on the bottom of the first three pages, and a signature purporting to be Menjivar's on the last page. Furthermore, in his initial declaration in opposition to Field Fresh's motion to compel, Menjivar stated that he reviewed a copy of the agreement and acknowledged that the copy "contains [his] signature." Under these circumstances, evidence that Menjivar did not remember signing this agreement is insufficient to create a factual dispute as to the authenticity of the agreement at step two and thus, Menjivar failed to carry his burden at step two. Because we conclude that the trial court applied an

---

[3] While we certainly recognize, as Menjivar points out in his supplemental briefing, that an image of a person's signature can be copied from one document and added to another document through widely available technology, a person faced with an agreement bearing an image of their signature could still challenge the authenticity of the document by, for example, testifying or stating under penalty of perjury that while the signature may look like their handwritten signature, they did not place the image of the signature on that document, or that they did not sign that document.

10

incorrect legal standard at the second step of the framework, we need not reach the issue of whether the trial court's determination that Field Fresh failed to carry its burden at step three was erroneous. (See, e.g., *Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at pp. 972–973 [application of incorrect legal standard as to petition to compel arbitration required remand for further proceedings, in light of prior confusion in case law].)

Because neither the parties nor the trial court had the benefit of the *Iyere* decision[4], and because *Iyere* created a change in this particular area of law, we remand the matter to the trial court to conduct further proceedings consistent with this opinion and to afford the parties an opportunity to develop the record further.[5]

---

[4] To be clear, we do not fault the trial court for its decision. At the time of the underlying proceedings, *Iyere* had not been decided, and the supplemental declaration filed by Menjivar wherein he averred that he did not remember signing the agreement was sufficient under *Gamboa* at the time to create a factual dispute.

[5] Given that we are remanding the matter for further proceedings as to step two, if the trial court determines that Menjivar is able to carry his burden at step two with additional evidence, nothing in our decision precludes the trial court from revisiting prior rulings made as to step three, or ruling on evidentiary objections previously raised by Menjivar.

## DISPOSITION

The order denying Field Fresh Foods Incorporated's motion is reversed and the matter is remanded for further proceedings in accordance with this opinion. Because our reversal is based on a change in the law, the parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

NGUYEN (KIM), J.*

We concur:

LAVIN, Acting P. J.

EGERTON, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.