Filed 4/28/26; Certified for Publication 5/27/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAVID KOSTANDIAN,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>AMERICAN HONDA MOTOR CO., INC., et al.,<br><br>     Defendants and Appellants. | B345489<br>(Los Angeles County Super. Ct. No. 24SMCV05670) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge. Reversed and remanded.

Lewis Brisbois Bisgaard & Smith, Jordan R. Fisher, Trevor J. Ingold and Jessica L. Barakat for Defendants and Appellants.

The Margarian Law Firm, Hovanes Margarian, Armen Margarian and Shushanik Margarian for Plaintiff and Respondent.

Defendants and appellants American Honda Motor Co., Inc. (American Honda Motor), and Standard Motor, LLC (Standard Motor) (collectively, appellants), appeal from the order denying their motion to compel arbitration. Appellants contend the motion should have been granted because appellants met their burden of establishing existing arbitration agreements with respondent David Kostandian (respondent), who failed to raise arguments and present evidence disputing the agreements' existence. We agree and reverse and remand.

## BACKGROUND

**The complaint**

Respondent filed a lawsuit against appellants in November 2024, alleging his leased 2024 Acura Integra contained several defects. Respondent asserted nine causes of action, which included both tort and warranty claims based on the allegedly defective vehicle. It was alleged American Honda Motor is the manufacturer of the vehicle, and Standard Motor, doing business as Acura of Los Angeles Westside, is the authorized dealer from whom respondent leased the vehicle. Respondent alleged he brought the vehicle to a manufacturer's authorized repair facility on five occasions, but the vehicle could not be repaired. Respondent also alleged he revoked acceptance of the vehicle in writing on August 23, 2024, due to the defects. Appellants, however, allegedly did not accept respondent's demand for revocation and refused to provide the remedies to which he was entitled.

**The arbitration agreements**

Respondent's lease agreement for the subject vehicle contains an arbitration provision. The arbitration provision states in relevant part:

<strong>"ARBITRATION PROVISION</strong>
<strong>"PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS</strong>

**"1.    EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.  [¶] … [¶]**

"Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our parents, subsidiaries, affiliates, employees, officers, agents, representatives, predecessors, successors or assigns, (individually and collectively 'us' or 'our') which arises out of or relates to your credit application, origination or servicing of this Lease, the manufacture, delivery, condition, or performance of this Vehicle, any representations, omissions, or warranties, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."

The lease's arbitration provision also specifies it is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) and includes an opt-out clause. The lease agreement contains the written signatures of respondent, the lessee, and a representative of Acura of Los Angeles Westside, the lessor. The first page of the lease states: "… Lessor will assign this Lease and

3

sell the Vehicle to Honda Lease Trust ('Assignee') and Acura Financial Services ('AFS') helped arrange this Lease."[1]

In addition, the manufacturer's warranty booklet respondent received for the subject vehicle contains an arbitration agreement. This arbitration agreement states in relevant part:

"Please carefully read this provision, which applies to any dispute between you and American Honda Motor Co., Inc. and its parent entities, subsidiaries, affiliates, agents, authorized service and repair facilities, employees, predecessors in interest, successors and assigns (together 'Acura,' 'we,' or 'us'). [¶] You and we agree that any dispute arising out of or relating to any aspect of the relationship between you and Acura will not be decided by a judge or jury but instead by a single arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules in effect on the date of delivery of your vehicle to you. This Agreement to Arbitrate includes all claims … . [¶] All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision. Disputes concerning the validity, application, scope, enforceability, or interpretation of this Agreement will be exclusively decided by the arbitrator."

The warranty booklet's arbitration agreement indicates it is governed by the FAA and contains an opt-out provision. The opt-out provision states: "You may opt out of arbitration within 30 days after the date of delivery of your vehicle to you by sending a letter … . If you do not opt out, then this agreement to arbitrate is binding." The warranty booklet does not contain a

---

[1] Honda Lease Trust and Acura Financial Services are not parties to the lawsuit.

place for the lessee to sign the agreement. The lease, however, included a final inspection at delivery sheet that respondent signed and initialed confirming his receipt of the owner's manual and warranty information.

**The motion to compel arbitration**

In February 2025, appellants moved to compel respondent to submit all of his claims to arbitration. Appellants contended Standard Motor, doing business as Acura of Los Angeles Westside, is entitled to enforce the arbitration provision under the lease as it is the original lessor. Further, appellants argued American Honda Motor can enforce the same provision because its wholly owned subsidiary, American Honda Financial Corporation doing business as Acura Financial Services, is a party named in the lease. Appellants also asserted American Honda Motor can enforce the warranty booklet's arbitration agreement because respondent impliedly consented to the agreement by accepting the vehicle repair benefits thereunder.

In opposition, respondent contended American Honda Motor cannot enforce the arbitration provision of the lease as a third party beneficiary. Further, respondent argued his claims do not fall within the scope of the arbitration clauses. Respondent also asserted the arbitration agreements are unconscionable. In addition, respondent maintained his claims are statutory claims exempt from arbitration.

In May 2025, the trial court issued an order denying the motion to compel arbitration without prejudice. The court concluded appellants failed to demonstrate respondent entered into any binding and enforceable arbitration agreement. Namely, the court found appellants failed to show an existing arbitration agreement between Standard Motor and respondent in the lease because there was no evidence Standard Motor was doing

5

business as Acura of Los Angeles Westside. The court indicated the lease, on its face, was only signed by respondent and Acura of Los Angeles Westside. The court also determined American Honda Motor could not enforce this arbitration provision because Acura Financial Services was not listed as a signatory or an assignee despite being described as having "helped arrange this Lease."

As to the warranty booklet's arbitration agreement, the trial court indicated such provisions are viewed with a high degree of skepticism as they bind consumers who remain silent during the opt-out period. Citing the Ninth Circuit Court of Appeals' decisions in *Knutson v. Sirius XM Radio Inc.* (9th Cir. 2014) 771 F.3d 559 (*Knutson*) and *Norcia v. Samsung Telecommunications America, LLC* (9th Cir. 2017) 845 F.3d 1279 (*Norcia*), the court explained warranties generally do not impose obligations on the buyer. The court concluded respondent's acknowledgment of receiving warranty information was insufficient to show he mutually assented to the arbitration agreement.

Appellants timely appealed.

**CONTENTIONS ON APPEAL**

Appellants assert three main arguments. First, appellants contend they established an existing arbitration agreement between Standard Motor and respondent in the lease because appellants presented a signed copy of the agreement and incorporated its terms verbatim, which respondent never disputed with evidence. Appellants argue respondent's allegation that Standard Motor was doing business as Acura of Los Angeles Westside was a judicial admission creating a waiver of proof. Second, appellants assert American Honda Motor can compel

6

arbitration under the lease because its wholly owned subsidiary, American Honda Financial Corporation doing business as Acura Financial Services, was a party in the agreement.

Finally, appellants maintain they established an existing arbitration agreement between American Honda Motor and respondent in the warranty booklet because appellants presented the agreement and incorporated its terms verbatim, which respondent never disputed with evidence. Appellants posit, even had respondent disputed consenting to the booklet's arbitration clause, appellants showed respondent impliedly assented to it by accepting the benefits of vehicle inspections, diagnoses, and repairs performed thereunder.

## DISCUSSION

### I.    Standard of review and applicable law

"Where there is no '*factual* dispute as to the language of [the arbitration] agreement' [citation] or 'conflicting extrinsic evidence' regarding the terms of the contract [citation], our standard of review of a trial court order granting or denying a motion to compel arbitration under [Code of Civil Procedure] section 1281.2 is de novo." (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1061–1062.) "'If the court's order [denying a motion to compel arbitration] is based on a decision of fact, then we adopt a substantial evidence standard.'" (*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.)

"California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. [Citation.] Even so, parties can only be compelled to arbitrate when they have agreed to do so. [Citation.] 'Arbitration … is a matter of consent, not coercion… .' [Citation.] Whether an agreement to arbitrate exists is a threshold issue of contract

7

formation and state contract law. [Citations.] The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843–844.)

## II. Respondent is subject to arbitration because appellants met their initial burden of establishing an arbitration agreement, the existence of which respondent never disputed

### A. *Appellants sufficiently presented an arbitration agreement in the lease as to Standard Motor*

Appellants contend their motion to compel arbitration as to Standard Motor should have been granted because they met their initial burden of establishing an arbitration agreement by presenting a signed copy of the agreement and incorporated its terms verbatim. Appellants add they had no burden of showing Standard Motor was doing business as Acura of Los Angeles Westside because respondent never disputed the existence of an arbitration agreement and had alleged Standard Motor was doing business as Acura of Los Angeles Westside. We agree.

"With respect to the moving party's burden to provide evidence of the existence of an agreement to arbitrate, it is generally sufficient for that party to present a copy of the contract to the court." (*Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1160.) Further, "unless there is a dispute over authenticity, it is sufficient for a party moving to compel arbitration to recite the terms of the governing provision." (*Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 793.) Under Code of Civil Procedure section 1281.2, "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists … ." "The statute does not require the petitioner to

8

introduce the agreement into evidence. A plain reading of the statute indicates that as a preliminary matter the court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity." (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219 (*Condee*).)

"This conclusion is bolstered by California Rules of Court, rule [3.1330]."[2] (*Condee, supra*, 88 Cal.App.4th at p. 219).) California Rules of Court, rule 3.1330 states: "A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference." "Rule [3.1330] does not require the petitioner to introduce the agreement into evidence or provide the court with anything more than a copy or recitation of its terms. Petitioner need only allege the *existence* of an agreement and support the allegation as provided in rule [3.1330]." (*Condee, supra*, at p. 219.)

We conclude appellants met their initial burden of establishing an arbitration agreement in the lease as to Standard Motor. Appellants presented a copy of respondent's lease agreement for the subject vehicle containing an arbitration agreement. Appellants also set forth the relevant provisions of the arbitration agreement verbatim in their moving papers. The language of the agreement indicates arbitration may be elected to

---

[2]    Rule 3.1330 of the California Rules of Court was formerly rule 371. (See *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 845, fn. 8.)

9

resolve disputes concerning the condition or performance of the vehicle, any warranties, and the servicing of the lease. The agreement is signed by respondent and the finance manager for Acura of Los Angeles Westside.

While Standard Motor is not an expressly named party in the lease agreement, appellants alleged it is doing business as Acura of Los Angeles Westside. Indeed, respondent even alleged in the complaint that Standard Motor is doing business as Acura of Los Angeles Westside. "The admission of fact in a pleading is a 'judicial admission.' … '… It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues. Under the doctrine of "conclusiveness of pleadings," a pleader is bound by well pleaded material allegations or by failure to deny well pleaded material allegations.'" (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271.) Hence, respondent conceded to the truth of appellant's allegations that Standard Motor is doing business as Acura of Los Angeles Westside and is thus a party to the lease. Appellants maintained Standard Motor is entitled to enforce the arbitration agreement in the lease as an original lessor. Appellants therefore set forth the necessary allegations, corroborated by respondent's own pleadings, showing Standard Motor is a party to the arbitration agreement.

Accordingly, appellants satisfied their initial burden of establishing an arbitration agreement by presenting a copy of the agreement, stating the relevant terms thereof verbatim, and providing the necessary allegations. The burden therefore shifted to respondent to dispute the existence of an arbitration agreement as to Standard Motor.

10

**B.** ***Respondent never disputed the existence of an arbitration agreement in the lease as to Standard Motor***

"If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then in the second step, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement. [Citation.] The opposing party can do this in several ways. For example, the opposing party may testify under oath or declare under penalty of perjury that the party never saw or does not remember seeing the agreement, or that the party never signed or does not remember signing the agreement." (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).)

"If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties. The burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Gamboa, supra*, 72 Cal.App.5th at pp. 165–166.)

Respondent challenged the arbitrability of his claims on other grounds in the underlying proceeding, but he never disputed the existence of an arbitration agreement in the lease as to Standard Motor. Respondent never claimed he had no arbitration agreement with Standard Motor because Acura of Los Angeles Westside was the named lessor. Respondent presented no arguments or evidence demonstrating Standard Motor was not a party to the arbitration agreement in the lease.

Respondent argues here appellants had the burden of showing Standard Motor is legally entitled to enforce an agreement signed under a registered fictitious name (a DBA)

11

because such matter is governed by California's fictitious business name statutes (Bus. & Prof. Code, §§ 17900–17930).[3] Respondent's arguments, however, entirely ignore the established burden-shifting framework for determining if a party has shown an existing arbitration agreement. Despite the burden shifting to respondent to challenge the existence of an arbitration agreement, respondent never raised any issues regarding the fictitious business name statutes in the underlying proceeding. Respondent asserts here appellants failed to demonstrate compliance with the fictitious business statutes, but nothing shows they had such a burden when respondent did not argue or produce evidence on that matter. As discussed above, the party moving to compel arbitration need not make an evidentiary showing of the agreement's validity. (See *Condee, supra*, 88 Cal.App.4th at p. 219.) Respondent's assertion that evidence of a DBA was needed to compel arbitration completely contravenes the established framework for deciding if an existing arbitration agreement has been established. Nothing shows the fictitious

---

[3] While it appears respondent concedes "the Parties admitted the ownership of the fictitious business," respondent is vague and ambiguous as to what this means and makes contradictory assertions thereto. Respondent asserts there is no factual dispute as to "who owned the business," but then suggests there is a dispute as to the "identity" of the contracting parties requiring appellants to produce evidence establishing Acura of Los Angeles Westside is a registered fictitious business name of Standard Motor. We note respondent never disputed the "identity" of Standard Motor in the underlying proceeding. Respondent's equivocation on this matter only obfuscates the issues and does not establish appellants had a burden to provide evidence of a DBA to compel arbitration.

business name statutes create a special evidentiary burden for compelling arbitration when a DBA is used.[4]

### C. *Appellants sufficiently presented an arbitration agreement in the warranty booklet as to American Honda Motor*

We likewise conclude appellants met their initial burden of establishing an arbitration agreement in the warranty booklet as to American Honda Motor.[5] Appellants produced a copy of this booklet containing American Honda Motor's express warranties for the subject vehicle and an arbitration agreement. Appellants also recited verbatim the relevant provisions of the booklet's arbitration agreement in their moving papers. The agreement's language indicates any disputes between respondent and

---

[4] Respondent maintains there is ultimately no reversible error because the motion to compel arbitration was denied without prejudice to allow appellants to produce evidence, which might still exist, showing Standard Motor was a signatory to the lease agreement. However, this fact is immaterial because appellants had no initial burden of making an evidentiary showing of the arbitration agreement's validity. (See *Condee*, *supra*, 88 Cal.App.4th at p. 219.) Affirming the order to allow appellants an opportunity to produce evidence of a DBA would impose a requirement for compelling arbitration that is not supported by any legal authority.

[5] Appellants also contend American Honda Motor can compel arbitration under the lease because its wholly owned subsidiary, American Honda Financial Corporation doing business as Acura Financial Services, was a party in the agreement. Because we conclude appellants sufficiently showed an existing arbitration agreement in the warranty booklet between American Honda Motor and respondent, the issue regarding the lease's arbitration provision as to American Honda Motor is moot and need not be considered here.

13

American Honda Motor as to their relationship, including any claims related to respondent's warranty and the performance or manufacturing of American Honda Motor's products, is to be decided by arbitration, not a judge or jury. The agreement also specifies respondent may opt out of arbitration within 30 days after the vehicle's delivery date, but respondent is bound to the agreement if he does not opt out. Appellants presented a document, the final inspection at delivery sheet, showing respondent provided his signature and initials confirming his receipt of the owner's manual and warranty information.

Accordingly, appellants satisfied their initial burden of establishing an arbitration agreement as to American Honda Motor. Appellants presented a copy of the agreement, stated the relevant terms thereof verbatim, and provided the necessary allegations. The burden therefore shifted to respondent to dispute the existence of an arbitration agreement as to American Honda Motor.

**D.** ***Respondent never disputed the existence of an arbitration agreement in the warranty booklet as to American Honda Motor***

Respondent also presented no arguments or evidence disputing the existence of an arbitration agreement as to American Honda Motor in the warranty booklet. While respondent challenged the arbitrability of his claims and the warranty booklet's arbitration provisions on other grounds, respondent never disputed he had an existing arbitration agreement with American Honda Motor in the warranty booklet.[6]

---

[6]     Respondent did argue in the underlying proceeding that American Honda Motor is not a party to the arbitration agreement in the lease because it is not a third party beneficiary

14

Citing the Ninth Circuit Court of Appeals' decisions in *Knutson, supra*, 771 F.3d 559 and *Norcia, supra*, 845 F.3d 1279, respondent asserts here he cannot be found to have mutually assented to the warranty booklet's arbitration provision because it was a hidden clause imposing the obligation on the buyer to opt out or be bound by its terms.[7] We note these arguments and legal authorities are not dispositive because respondent never raised them in the underlying proceeding.[8] Regardless, *Knutson* and *Norcia*, two nonbinding decisions on this matter, are inapposite.

Respondent's reliance on *Norcia* is misplaced because that case involved a nonwarranty dispute. (*Norcia, supra*, 845 F.3d at p. 1284.) Indeed, in discussing the differences between contract and warranty formation, the *Norcia* court indicated, "[u]nder [*Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213], Samsung may be able to require Norcia to arbitrate claims arising out of the Standard Limited Warranty contained in the Product Safety & Warranty Information brochure." (*Id.* at p. 1288, fn. 3.) The *Norcia* court expressly noted it was not ruling on

thereof. However, those arguments only applied to the lease, not the warranty booklet, to which respondent never challenged the existence of the arbitration agreement therein.

[7] Respondent also discusses *Yuri v. Hyundai Motor America* (2023 Cal. Super. LEXIS 93783) (*Yuri*) in his arguments concerning the warranty booklet's arbitration agreement. Not only is *Yuri* a nonbinding trial court order, respondent invokes a discussion from that case regarding unconscionability, which is inapposite to the issue here concerning existence of an arbitration agreement.

[8] The trial court raised the discussions in *Knutson* and *Norcia* on its own, not respondent. But it was respondent's burden to raise and support the arguments with evidence, which he failed to do. (See *Gamboa, supra*, 72 Cal.App.5th at p. 165.)

whether the consumer could be required to arbitrate claims arising out of a warranty information brochure "because Norcia has not brought any warranty claims against Samsung." (*Ibid*.) In contrast with *Norcia*, respondent here alleged violations of written warranties as "fully outlined in the Manufacturer's Warranty Booklet" and asserted a cause of action for "breach of written warranty." (Some capitalization omitted.)

In *Knutson*, the claimant purchased a vehicle from Toyota that included a 90-day trial subscription to Sirius XM satellite radio. (*Knutson, supra*, 771 F.3d at pp. 561–562.) The claimant filed a class action against Sirius XM Radio Inc., who successfully compelled arbitration in the district court and the Ninth Circuit reversed. (*Ibid*.) The decision in *Knutson* was based on two findings: (1) the terms of the arbitration agreement were not clearly and effectively communicated to the claimant because he did not receive the agreement until a month after the satellite radio service was activated; and (2) the claimant had no reason to know he had any contractual relationship with Sirius XM Radio Inc. after purchasing a car from Toyota. (*Id*. at pp. 562, 566.)

*Knutson* is distinguishable. While respondent here posits there was no mutual assent since he did not receive the warranty booklet until after the sale was completed, no evidence was presented supporting this assertion. Respondent provided no declaration stating when he received the warranty booklet. Even if respondent had provided such statements, they would be at odds with his signings confirming he received the vehicle's warranty information as well as his pleadings indicating "representations were made [to respondent] in Manufacturer's New Vehicle Limited Warranty." In addition, respondent does not argue he had no reason to believe he had a contractual relationship with American Honda Motor. Thus, respondent

16

failed to meet his burden of proof in disputing the existence of an arbitration agreement with American Honda Motor.

## DISPOSITION

The March 18, 2025 order denying the motion to compel arbitration is reversed. On remand, the trial court is directed to enter an order granting appellants' motion to compel arbitration. Appellants are awarded their costs on appeal.

CHAVEZ, Acting P. J.

We concur:

RICHARDSON, J.

GILBERT, J.*

---

\* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Filed 5/27/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAVID KOSTANDIAN, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., et al., <br><br> Defendants and Appellants. | B345489 <br> (Los Angeles County <br> Super. Ct. <br> No. 24SMCV05670) |

THE COURT:*

  The opinion in the above-entitled matter filed on April 28, 2026, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

---

\*   CHAVEZ, Acting P. J.   RICHARDSON, J.   GILBERT, J.\*\*

\*\*   Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.